**Brenda Gale WILLETT**

v.

**Charles FORD and Larry Weems.**

Court of Appeals of Tennessee, Eastern Section.

Dec. 5, 1979.

Certiorari Denied by Supreme Court July 28, 1980.

W. P. Boone Dougherty of Lockridge, Dougherty & Becker, and Peter J. Alliman of Alliman, Olive & Miller, Knoxville, for appellant, Brenda Gale Willett.

Edward R. Sempkowski of Charles R. Terry & Associates, Morristown, for Charles Ford.

G. P. Gaby of Milligan, Coleman, Fletcher, Gaby & Kilday, Greeneville, for Larry Weems.

## OPINION

PARROTT, Presiding Judge.

Plaintiff/appellant Brenda Gale Willett brought this action below against defendant/appellant Charles Ford and defendant/appellee Larry Weems seeking $250,000 in compensatory and punitive damages for injuries suffered as the result of the defendants' actions in causing a criminal warrant to issue against her. In her complaint Willett sought damages from the defendants for false arrest and imprisonment, abuse of process, malicious prosecution, slander, libel, intentional infliction of emotional distress, and outrageous and extreme conduct.

The factual background of this appeal may be said to have begun on or about May 7, 1977. It was at that time that William R. Brookins, Jr., a minor 17 years of age, allegedly illegally purchased a quantity of alcoholic beverages from Ford's Package Store, an establishment owned by the defendant/appellant Charles Ford. Later that evening, allegedly on account of the consumption of the illegally-purchased alcohol, the driver of the automobile in which Brookins was riding lost control of his vehicle and crashed into a tree. As a result of the accident, Brookins was severely injured.

In mid-February of 1978, Brenda Gale Willett, an attorney, sent a letter to Charles Ford concerning the above-described events. The relevant portion of that letter reads as follows:

> On May 7, 1977, Ford's Package Store sold alcoholic beverages to William R. Brookins, Jr., then seventeen years of age. As a result thereof, he became intoxicated, was involved in an automobile accident, and suffered very serious injuries from which he has not recovered, and may never recover.
>
> As I am sure you know, this sale was in violation of the laws of Tennessee. If you wish to settle this matter, without resort to the courts, please contact me immediately.
>
> Unless I hear from you within five days of the date of this letter, I will assume you do not wish to compromise, and we will file suit. Enclosed please find certain relevant portions of the Complaint which we intend to file unless I hear from you.
>
> We are quite willing to handle this without filing suit, if you will work with us.

In addition to the above letter, Ford also received portions of a complaint to which the letter refers. That complaint, among

other things, charged that Ford had violated T.C.A. 57-142 (Regulation of retail sales), 57-156 (Prohibited practices—Penalties), and 57-221 (Sales to minors prohibited), and further prayed that the plaintiffs be awarded compensatory damages of $2,000,000 and punitive damages in a like amount.

Upon receipt of the above letter and complaint, Ford telephoned and later went to the home of Assistant District Attorney Larry Weems. After reading the letter, Weems called his superior, Attorney General Heiskell Winstead, to discuss the probability of obtaining a warrant against appellant Willett. In his pre-trial deposition, Winstead testified that, on the basis of the information Weems communicated to him,[1] "there was probable cause to obtain a warrant for extortion if the person receiving the letter wanted to do so."

After the aforementioned discussion, Weems accompanied Ford to the Greene County sheriff's office where a warrant was issued charging Willett with violating T.C.A. 39-4301 (Threats for purpose of extortion or obtaining action). Willett was arrested, booked, and then released after posting bond. Later, the extortion charge was dropped upon a motion by the State.

In the court below, both defendants filed motions for summary judgment. The chancellor felt that the motion of Larry Weems was well taken and granted summary judgment as to him. However, the motion for summary judgment by Charles Ford was denied.

## I.

In the court below, defendant Charles Ford moved for summary judgment, supported by depositions and Ford's own affidavit, alleging that "there is no genuine issue of any material facts and summary judgment should enter as a matter of law." The chancellor overruled the motion on April 23, 1979, but granted an interlocutory appeal to this Court (presumably pursuant

to T.C.A. 27–305—Discretion to review interlocutory appeal . . .), certifying the question of "whether under the undisputed facts Charles Ford acted in good faith and with probable cause in reliance on the advice of an assistant district attorney general and a district attorney general and is entitled to dismissal as a matter of law."

T.C.A. 27–305 makes it plain that review by this Court of matters such as this interlocutory appeal of the chancellor's overruling the defendant's motion for summary judgment is purely discretionary:

The Court of Appeals, or, in matters expressly limited to its review, the Supreme Court, may in its discretion review matters originating under this section.

As it is within our discretion whether to accept this appeal, we hereby decline to do so.

As our Supreme Court stated in *Williamson County Broadcasting Company et al. v. Williamson County Board of Education et al.*, 549 S.W.2d 371 (Tenn. 1977), we do not wish to be understood to hold that in no case is T.C.A. 27–305 to be utilized wherein summary judgment is denied. In the *Williamson County Broadcasting* case the Court said:

In those cases wherein a party defendant is unsuccessful in his motion for a summary judgment, and where its correct resolution would terminate the controversy or substantially narrow the issues or materially advance the ultimate termination of the litigation, an interlocutory appeal on the basis of a trial judge's certification, would be proper for the appellate courts, acting in their discretion, to consider.

We do not believe that the proper exercise of our discretion compels us to consider this appeal. In *Breakstone v. Home Federal Savings and Loan Association*, 539 S.W.2d 45 (Tenn.App. 1976), the chancellor had overruled the defendant's motion for summary judgment and granted a discre-

---

1. Winstead testified that the fact that the sender of the letter was an attorney was not communicated to him; further, he could not recall whether Weems had read the entire letter or only portions of it to him over the telephone.

tionary appeal pursuant to T.C.A. 27–305. In declining to accept the appeal, the Court quoted with approval from *Ratliff v. Hinman, et al.* (Western Section, filed February 16, 1976):

". . . In the exercise of our discretion in accepting or rejecting an appeal under T.C.A. § 27–305, we are mindful that the true issues are the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice on the other. Where the ruling of the trial judge is that the parties go to trial because of the existence of a genuine issue as to material facts, the danger of denying justice is removed. Only under the most extraordinary and compelling circumstances could we hold that the possible reduction in time and expense of trial would justify a review of that decision. The present lawsuit does not present those extraordinary circumstances, and we will not accept this appeal."

We accept the Court's reasoning in *Breakstone* and hereby find that the present appeal does not present the above-mentioned ". . . most extraordinary and compelling circumstances." Therefore, the interlocutory appeal of Charles Ford will not be reviewed by this Court.

## II.

■ The chancellor, in granting summary judgment for the defendant/appellant Larry Weems, was of the opinion that Weems, as an assistant district attorney general, had immunity from this civil suit for damages. On the basis of *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), we affirm.

Appellant Willett's first issue presented on appeal sets forth a question separate and apart from the prosecutorial immunity controversy. Willett contends that Weems cannot wrap the mantle of prosecutorial immunity about his conduct because, under the facts in the case at bar, Weems was acting in his capacity as a private attorney rather than in his capacity as a public prosecutor. In support of this theory, Willett stresses that Weems and Ford had a prior business and social relationship which was an integral part of the events that transpired in the case at bar.

■ Summary judgment should only be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Tennessee Rules of Civil Procedure # 56.03; *Phillips v. Pittsburgh Consolidated Coal Company*, 541 S.W.2d 411 (Tenn. 1976). Where a dispute exists as to a material fact, the trial court is bound to overrule the motion. *Bowman v. Henard*, 547 S.W.2d 527 (Tenn. 1975). However, we feel that, on the question of whether Weems was acting as a private attorney, there is no dispute as to a material fact such that the chancellor's granting of the motion for summary judgment must be overturned. The aforementioned *past* business and social relationship, in the opinion of this Court, does not arise to the level of a "material fact" in the effort of the appellant Willett to prove that Weems acted as a private attorney in the *present* situation. Therefore, even viewing the evidence "in the light most favorable to the opponent of the motion" and drawing "all legitimate conclusions of fact therefrom in that favor," we feel that the chancellor did not err in granting summary judgment as to Weems and overrule Willett's first assertion. *Stone v. Hinds*, 541 S.W.2d 598 (Tenn.App. 1976).

The remaining issues proffered by plaintiff/appellant Willett concern the amenability to suit of defendant/appellant Weems even though he was acting in his capacity as a public prosecutor.

Before examining those assignments, this Court feels that a brief examination of the law as relating to prosecutorial immunity would be instructive.

None of the parties to this lawsuit have cited cases arising in our State which are directly on point with the question now confronting this Court. However, the well settled common law rule of prosecutorial immunity regarding an action for malicious prosecution was stated in *Yaselli v. Goff et al.*, 12 F.2d 396 (2nd Cir. 1926):

In our opinion the law requires us to hold that a special assistant to the Attorney General of the United States, in the performance of the duties imposed upon him by law, is immune from a civil action for malicious prosecution based on an indictment and prosecution, although it results in a verdict of not guilty rendered by a jury. The immunity is absolute, and is grounded on principles of public policy.

The Supreme Court affirmed this holding in *Yaselli v. Goff*, 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927).

■ Recent litigation on the issue now confronting this Court has entered in the Federal Court system involving civil rights claims under 42 U.S.C. § 1983. However, in no way does this fact diminish the precedential value of these cases in reference to common law actions based on malicious prosecution such as in the case at bar. This Court finds particularly instructive the United States Supreme Court case of *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). Throughout the majority opinion written by Justice Powell, parallels, are drawn between the absolute immunity afforded prosecutors at common law and the immunity that should cloak the prosecutor in 42 U.S.C. § 1983 actions. After citing *Yaselli* for the proposition that prosecutors are afforded absolute immunity at common law, Justice Powell framed the issue for the *Imbler* Court thusly:

> . . . whether the same considerations of public policy that underlie the common-law rule likewise countenance absolute immunity under § 1983.

*Imbler*, at 424, 96 S.Ct. at 992. After answering that question in the affirmative and outlining the policy considerations which mandate that absolute immunity be afforded to prosecutors in both common law and 42 U.S.C. § 1983 actions, Justice Powell further states that

> . . . the considerations outlined above dictate the *same absolute immunity under § 1983 that the prosecutor enjoys at common law.* (Emphasis supplied.)

Id. at 427, 96 S.Ct. at 993. Therefore, since the *same immunity* is applied in § 1983 actions as is applied in common law actions, the decisions in those cases—such as *Imbler* —which involve prosecutorial immunity under § 1983 are equally applicable to common law actions such as in the case at bar.

■ In plaintiff/appellant Willett's next assertion, it is urged that even if Weems was here acting as a prosecutor, he is liable for damages in a civil suit because there existed a conspiracy between Weems and Ford which renders Weems liable for the acts of his co-conspirator. In other words, the existence of the alleged conspiracy in this case renders Weems liable for damages from which he would otherwise have been immune.

This Court is not unmindful of several Federal Court decisions which lend credence to Willett's argument, such as *Madison v. Pardy*, 410 F.2d 124 (5th Cir. 1955). However, these cases are inconsistent with the Supreme Court's later holding in *Imbler* in terms of how the existence of a conspiracy affects the immunity of a public prosecutor. In *Imbler*, such a conspiracy was alleged by the petitioner:

> In April 1972, Imbler filed a civil rights action, under U.S.C. § 1983 and related statutes, against respondent Pachtman, the police fingerprint expert, and various other officers of the Los Angeles police force. He alleged that a conspiracy among them unlawfully to charge and convict him had caused him loss of liberty and other grievous injury.

Id., at 415, 416, 96 S.Ct. at 988. Even in the face of such an allegation of the existence of a conspiracy, the Supreme Court cloaked the public prosecutor with the same immunity in a § 1983 action as exists at common law. Therefore, since the *Imbler* Court in no way felt the existence of a conspiracy abrogated the immunity of the prosecutor which would otherwise be afforded him, we hereby overrule Willett's assertion that the existence of a conspiracy is determinative here.

Plaintiff/appellant Willett's remaining arguments attempt to place defendant/appellee Weems' actions within those parameter of conduct which were not cloaked with absolute immunity by *Imbler*. It is true that the *Imbler* decision does not afford absolute immunity to every action of the public prosecutor but rather allowed those decisions to stand which granted only a "good-faith" defense to the prosecutor for certain of his activities. However, we feel that Weems' actions in the case at bar fall squarely within those parameters of conduct as to which *Imbler* grants absolute immunity:

> We hold only that *in initiating a prosecution* and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983. (Emphasis supplied.)

Id. at 431, 96 S.Ct. at 995. Clearly, by his action in this case, Weems was, in the words of the *Imbler* Court, "initiating a prosecution." Therefore, his actions are within those prosecutorial functions which are afforded absolute immunity and he is not amenable, in this instance, to a civil suit for damages.

All of plaintiff/appellant Willett's assertions are overruled. This Court declines to accept the interlocutory appeal of defendant/appellant Ford. Let the costs in this appeal be equally divided between the appellants.

GODDARD and FRANKS, JJ., concur.