649 So.2d 803 (1995)
Gary R. CONNOR, et al.
v.
Terry R. REEVES, et al.
No. 26,419-CA.
Court of Appeal of Louisiana, Second Circuit.
January 25, 1995.
Rehearing Denied February 23, 1995.
Writ Denied April 28, 1995.
John C. Blake, Jonesboro, for appellants.
James A. Bolen, Jr., Alexandria, for appellees.
Before SEXTON and STEWART, JJ., and CULPEPPER, J. Pro Tem.
CULPEPPER, Judge Pro Tem.
Plaintiff, Gary R. Connor, brought this civil suit for damages against Winn Parish District Attorney Terry R. Reeves, individually and in his official capacity, alleging that he acted maliciously and in concert with the Winn Parish Grand Jury to indict Gary Connor on charges of malfeasance in office, causing him humiliation, embarrassment, mental anguish and injury to his reputation. Connor's wife, Rachel, also sued for loss of consortium. The trial court, after denying defendant's first motion for summary judgment, subsequently granted defendant's second motion for summary judgment and plaintiffs appealed. For the reasons which follow, we affirm.

FACTS
Gary R. Connor served as Chief Criminal Deputy of Winn Parish. He and his wife, Rachel, were subpoenaed to testify before the Winn Parish Grand Jury regarding the *804 death of Lisa Meyers Stevenson. Mr. Connor considered himself a close personal friend of Dr. Meyers, Lisa's father, and he had been an investigating officer in her death. He was later indicted by the grand jury for malfeasance in office in connection with his investigation into Lisa's death.[1]
District Attorney Reeves then swore out a warrant for Connor's arrest and began his prosecution. Subsequently, the proceeding was dismissed pursuant to a motion to quash filed on behalf of Connor and a contested court hearing. The trial court reasoned that in order to adequately charge an individual with the crime of malfeasance in office, certain absolute elements must be alleged with specificity. Therefore, the trial court gave the State three days from judgment to set forth in detail the statutory provisions which delineate an affirmative duty upon the defendant. The State, however, failed to provide the requested information.
Thereafter, the present civil matter was initiated by the Connors, alleging the three causes of action of malicious prosecution, abuse of process and invasion of privacy. Defendant answered the plaintiffs' petition and thereafter on July 30, 1992, filed his first motion for summary judgment accompanied by his affidavit and that of his assistant, Herman A. Castete. In his memorandum in support of the motion he argued that there was no showing of malice, and in any event, he enjoys absolute immunity from liability for his conduct of prosecutional duties in his official capacity. With the recusal of the sitting judge who had ruled in the criminal matter, Judge Jimmie C. Peters, Judge Ad Hoc, rendered his decision on November 13, 1992, denying defendant's motion. He stated in his reasons for judgment that
the court does not have the right to make a determination in advance of trial as to whether or not a party is likely to prevail, but must simply determine whether a factual dispute exists.
The trial court, at that time, found that a factual dispute existed.
Subsequently, on July 21, 1993, the defendant filed his second motion for summary judgment and attached thereto a second affidavit of Castete, his own deposition, Mr. and Mrs. Connor's depositions and that of Wiley Warren, the retired sheriff of Winn Parish. Reeves reiterated his contention that he was absolutely immune from civil suit for the activities relied on by plaintiffs. The second motion was heard, and on October 14, 1993, the trial court granted the motion, reversing its initial ruling. In his reasons for this judgment, Judge Peters stated, in part, that
[t]here are numerous issues of fact in this litigation. However, nothing in the record establishes a factual conflict over the six elements necessary for a plaintiff to prevail in an action for malicious prosecution. Particularly, that which is missing is evidence of malice on the part of the district *805 attorney. See Eusant v. Unity Industrial Life Insurance Association, 195 La. 347, 196 [So.] 554 (La.1940). The plaintiffs contend they were treated in a rude, unprofessional, hostile, and crude manner, but that in itself does not establish malice.
The court cannot find factual justification for maintaining this action and, as such, as a matter of law, the defendants are entitled to summary judgment relief.
Following this second judgment, Connor and his wife perfected their appeal.

DISCUSSION
While the trial court felt it necessary to rule based on the issue of malice, we feel it is unnecessary to make that determination. We begin by noting that the United States Supreme Court has recently spoken on a prosecutor's immunity. In Buckley v. Fitzsimmons, ___ U.S. ___, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993), the Court reaffirmed Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), explaining as follows:
We expressly stated that "the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom," and are nonetheless entitled to absolute immunity. Id., at 431, n. 33, 96 S.Ct., at 995, n. 33. We noted in particular that an out-of-court "effort to control the presentation of [a] witness' testimony" was entitled to absolute immunity because it was "fairly within [the prosecutor's] function as an advocate." Id., at 430, n. 32, 96 S.Ct., at 995, n. 32. To be sure, Burns [v. Reed, 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547] [(1991)] made explicit the point we had reserved in Imbler, 424 U.S., [at 428-34, and n. 33, 96 S.Ct.] at 994-996, and n. 33: A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity. See Burns, 500 U.S., at [495], 111 S.Ct., at 1944. We have not retreated, however, from the principle that acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity. Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made.

Buckley, at ___, 113 S.Ct., at 2615.
(emphasis added).
While the Louisiana Supreme Court has not spoken definitively on the issue of prosecutorial immunity, the First Circuit has recognized that pre-indictment actions taken by a district attorney were within the scope of his prosecutorial duties and afforded him absolute immunity. Dickerson v. Kemp, 540 So.2d 467, at 469-470 (La.App. 1st Cir.1989). The basic concern is that public officers would be greatly hampered, deterred and intimidated in the discharge of their duties if they were not protected to some reasonable degree from private liability for actions which are improper or exceed their authority. This immunity promotes the fearless, vigorous, and effective administration of the policies of government. Moreover, the threat of suit could deter competent people from taking office, as well as presenting a drain of valuable time caused by defending such actions. See 63A Am.Jur.2d Public Officers and Employees § 358 (1984).
Plaintiffs argued in the trial court and on appeal that there are issues of fact as to whether there was malice in the commencement and continuation of the criminal proceedings against Connor. They say the affidavits, depositions and other documents show there was no evidentiary or legal basis for the charges, that the charges were false, that Reeves knew they were false, and he was therefore guilty of malice.
However, plaintiffs neither allege nor present evidence of any wrongful conduct by Reeves outside of his prosecutorial duties. There is no evidence that he was performing administrative or investigative duties. All of his actions at issue were purely prosecutorial, and thus protected by absolute immunity. There are no genuine issues of material fact *806 and defendant is entitled to judgment as a matter of law.
For the reasons assigned, the judgment appealed is affirmed at the cost of appellants.
AFFIRMED.

APPLICATION FOR REHEARING
Before SEXTON, NORRIS, BROWN and STEWART, JJ., and CULPEPPER, J. Pro. Tem.
Rehearing denied.
NOTES
[1] The bill of indictment charged as follows:

COUNT ONE: On or about October 24, 1990, while acting in his official capacity as the Chief Criminal Deputy of the Winn Parish Sheriff's Office did prevent the taking of statements and investigation of the facts surrounding the death of Lisa Meyers, knowing that the death was under circumstances that warranted a complete investigation in violation of his oath as a deputy sheriff and the administrative rules of the Winn Parish Sheriff's Office, all in violation of La.R.S. 14:134(1);
COUNT TWO: On or about October 24, 1990 while acting in his official capacity as the Chief Criminal Deputy of the Winn Parish Sheriff's Office did prevent Deputy Robert Corbello, the investigator on duty, from arriving at the scene of the death of Lisa Meyers to determine the facts surrounding the death of Lisa Meyers, knowing that the death was under such circumstances that a complete investigation was warranted in violation of his oath as a deputy sheriff and the administrative rules of the Winn Parish Sheriff's Office, all in violation of La.R.S. 14:134(1) and La.R.S. 14:134(3);
COUNT THREE: On or about October 25, 1990, while acting in his official capacity as the Chief Criminal Deputy of the Winn Parish Sheriff's Office did prevent Deputy Johnny Wooten and Deputy Paul Alsup from taking statements from the family of Lisa Meyers concerning the death of Lisa Meyers in violation of his oath of office as a deputy sheriff and the administrative rules of the Winn Parish Sheriff's Office, all in violation of La.R.S. 14:134(1) and La.R.S. 14:134(3);
COUNT FOUR: On or about April 6, 1991 knowing that a subpoena had been issued for the appearance of Chawn Romero, did not serve her or have her served, with said subpoena when he discovered her presence in Winn Parish, Louisiana, all in violation of La.R.S. 14:134(1).