681 So.2d 944 (1996)
Issac KNAPPER
v.
Harry F. CONNICK and David Paddison.
No. 96-C-0434.
Supreme Court of Louisiana.
October 15, 1996.
*945 Bruce Steven Kingsdorf, Cleveland, Barrios, Kingsdorf & Casteix, New Orleans, for applicant.
Bruce Gerard Whittaker, Michael Riehlmann, Laurie A. White, William F. Wessel, Charlotte Ann Lagarde, Wessel, Bartels & Ciaccio, New Orleans, for respondent.
Ellis Paul Adams, Jr., for Louisiana District Attorneys Association (Amicus Curiae).
Patricia Nailey Bowers, for Walter Reed, District Attorney (Amicus Curiae).
MARCUS, Justice.[*]
In 1979, Issac Knapper was indicted by an Orleans Parish grand jury for first degree murder. After a jury trial, he was convicted and sentenced to life imprisonment. His conviction and sentence were affirmed on appeal.[1] Subsequently, Mr. Knapper obtained the initial police report for the murder at issue and filed a petition for post-conviction relief, claiming that the report contained exculpatory information which should have been disclosed under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). After an evidentiary hearing ordered by this court,[2] the trial judge denied relief. Upon application to this court, we granted Mr. Knapper's petition for post-conviction relief in a divided opinion.[3] Three of the justices dissented, being of the opinion that the information in the report was not sufficient to change the outcome of the proceedings or to create a reasonable doubt that did not otherwise exist, even if the information had been made available to the defense prior to trial. The District Attorney chose not to retry Mr. Knapper and entered a nolle prosequi of the charge.[4]
After his release from prison in 1991, Mr. Knapper filed a suit for malicious prosecution against David Paddison, the Orleans Parish Assistant District Attorney who prosecuted his case, alleging that Paddison acted with malice or reckless disregard of his rights in proceeding with the prosecution and not turning over exculpatory information to defense counsel.[5] Mr. Paddison moved for summary judgment, asserting the affirmative defense of absolute prosecutorial immunity from suit for conduct within the course and scope of his responsibilities. Alternatively, he argued that he was entitled to summary judgment because Mr. Knapper could not prove all of the essential elements of a claim for malicious prosecution as articulated by this court in Miller v. East Baton Rouge Parish Sheriff's Department, 511 So.2d 446 (La.1987).
The trial judge granted Paddison's motion for summary judgment. The Court of Appeal, Fourth Circuit, reversed the trial court, holding that a prosecutor is not entitled to absolute immunity from suit for malicious prosecution and that there were unresolved issues of material fact precluding the grant *946 of summary judgment.[6] Upon the application of David Paddison, we granted certiorari to review the correctness of that decision.[7]
The issue presented for our review is whether a prosecutor, acting within the course and scope of his responsibilities in a criminal proceeding, is entitled to absolute immunity from a subsequent civil suit for damages for alleged malicious prosecution of the original criminal matter.
We have not yet addressed the question of whether and under what circumstances a prosecuting attorney should be afforded absolute immunity from claims of prosecutorial misconduct in the course of a criminal proceeding. We have, however, addressed the issue of absolute immunity in other contexts. We have long held on grounds of necessity and public policy that judges acting within the scope of their subject matter jurisdictions cannot be held liable for acts done in their judicial capacities. Killeen v. Boland, Gschwind Co., 157 La. 566, 102 So. 672 (1924). The immunity is extended because of the function it protects rather than the title of the person who claims it. Absolute immunity attaches to all acts within a judge's jurisdiction, even if those acts can be shown to have been performed with malice, in order to insure that all judges will be free to fulfill their responsibilities without the threat of civil prosecution by disgruntled litigants. We have also held that communications made in judicial or quasi-judicial proceedings carry an absolute privilege so that witnesses, bound by their oaths to tell the truth, may speak freely without fear of civil suits for damages. Bienvenu v. Angelle, 254 La. 182, 223 So.2d 140 (1969), overruled on other grounds, Gonzales v. Xerox, 320 So.2d 163 (La.1975).
In Diaz v. Allstate Insurance Co., 433 So.2d 699 (La.1983), we held that state prosecuting attorneys are constitutional officers who serve in the judicial branch of the government. In keeping with our holding in Diaz and other persuasive authorities, several appellate courts of this state have ruled that prosecuting attorneys acting within the scope of their prosecutorial duties are entitled to essentially the same immunity extended to judges. Hill on Behalf of Hill v. Joseph, 94-1859 (La.App. 1st Cir. 5/5/95); 655 So.2d 486; Connor v. Reeves, 26,419 (La. App.2d Cir. 1/25/95); 649 So.2d 803, writ denied, 95-0771 (La.4/28/95); 653 So.2d 601; Dickerson v. Kemp, 540 So.2d 467 (La.App. 1 Cir.1989); Foster v. Powdrill, 463 So.2d 891 (La.App. 2d Cir.1985).
The overwhelming majority of courts in other states have extended absolute immunity to prosecutors when they are acting within their traditional roles as advocates for the state.[8] Commentators similarly document *947 the prevailing view that prosecutors are entitled to absolute immunity from suit for malicious prosecution when acting within the scope of their traditional prosecutorial duties.
When they are officers of the state such as a prosecuting attorney or attorney general, it seems that attorneys at law are protected by an absolute privilege and that their immunity is indefeasible.... "Unless so protected, it would be but human that they might refrain from presenting to a grand jury or prosecuting a matter which in their judgment called for action but which a jury might, possibly determine otherwise." Fowler V. Harper et. al., The Law of Torts § 4.3, at 413-14 (2d ed.1986), citing Yaselli v. Goff, 8 F.2d 161, at 162 (S.D.N.Y.1925).
The Restatement (Second) Of Torts § 656 (1970) likewise provides that a "public prosecutor acting in his official capacity is absolutely privileged to initiate, institute, or continue criminal proceedings." See also, W. Page Keeton et. al., Prosser and Keeton on the Law of Torts, § 132, at 1056-59 (5th ed.1984); 52 Am.Jur.2d Malicious Prosecution § 67 (1964).
Chief among the reasons most often cited for granting absolute prosecutorial immunity are concern that constant fear of later civil suits for damages may chill the vigorous prosecution of those charged with violating state statutes; that such fears may deter competent people from seeking office; and that defense of claims for malicious prosecution may drain valuable time and effort. Balancing the interests of the plaintiff in a malicious prosecution action against the interests of the system of justice as a whole, Judge Learned Hand early observed:
As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duties to the constant dread of retaliation. Gregoire v. Biddle, 177 F.2d 579, 581 (2d Cir.1949), cert. denied, 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950).
The same concerns that have served as a foundation for a grant of absolute prosecutorial immunity from state malicious prosecution charges were considered and deemed persuasive by the United States Supreme Court in determining whether to grant absolute prosecutorial immunity to a state prosecuting officer acting within the scope of his prosecutorial duties in a case alleging a violation of civil rights under 42 U.S.C. § 1983. Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). While the decision in Imbler is not binding on this court because it dealt with a federal cause of action rather than a state claim for malicious prosecution, the sweep of the opinion specifically takes in and approves the common-law rule of absolute immunity for a prosecutor acting within the scope of his duties. We find the reasoning of the Court regarding absolute prosecutorial immunity persuasive. Moreover, we note that we have harmonized our own state immunity rules with federal immunity principles in the past.[9]
In Imbler, the Court concluded that the immunity of a prosecutor is based upon the same considerations that support the extension *948 of absolute immunity to judges and grand jurors acting within the scope of their duties. Id. at 423, 96 S.Ct. at 991. "These include the fear that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." Id. at 423, 96 S.Ct. at 991.
Distinguishing between absolute immunity, which will defeat a suit at the outset, and qualified immunity, which depends on circumstances and motivations which often must be established by evidence at trial, the Court concluded that extension of only a qualified immunity would pose a danger even to the honest prosecutor who might be called upon to defend his actions long after the conduct assailed. "Defending these decisions, often years after they were made, could impose unique and intolerable burdens upon a prosecutor responsible annually for hundreds of indictments and trials." Id. at 425-26, 96 S.Ct. at 993.[10] The Court concluded that a qualified immunity would not sufficiently safeguard the free exercise of the prosecutor's discretionary judgment and would have an adverse effect on the functioning of the criminal justice system. It might also taint the availability of post-conviction relief if the grant of such relief by a reviewing court might result in the prosecutor's being called upon to respond in damages for his conduct of the original proceeding. Id. at 424-27, 96 S.Ct. at 992-93.
Although the Supreme Court acknowledged that there may be cases where prosecutorial misconduct can be proven to have been intentional and malicious, nevertheless the disadvantages that would result from any lesser form of immunity would be so substantial that absolute immunity is warranted even in cases where there is evidence of malice. The Court held:
To be sure, this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty. But the alternative of qualifying a prosecutor's immunity would disserve the broader public interest. It would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system. Moreover, it often would prejudice defendants in criminal cases by skewing post-conviction judicial decisions that should be made with the sole purpose of insuring justice. Id. at 427-428, 96 S.Ct. at 993-94.
Accordingly, the Court held in Imbler that even the knowing use of false testimony before a grand jury and at trial would not defeat the absolute immunity of the prosecutor for conduct in "initiating a prosecution and presenting the state's case." Id. at 431, 96 S.Ct. at 995.
In Imbler, concurring opinions of three justices raised the question of whether absolute immunity is appropriate in cases where, as here, the claimed misconduct relates to the suppression of exculpatory material. The majority of the Court rejected the suggested distinction and found that even in cases involving suppression of exculpatory material, a grant of absolute immunity is in the best interest of the criminal justice system. The Court noted that virtually any claim of prosecutorial misconduct could be reframed in terms of suppression of exculpatory information since any alleged misdeeds of a prosecutor in the initiation or presentation of the state's case would likely tend to create doubt as to the defendant's guilt. Thus, adoption of an exception for the suppression of exculpatory material would eviscerate the immunity extended. Id. at 431, n. 34, 96 S.Ct. at 996, n. 34.
Shortly after rendering its decision in Imbler, the United States Supreme Court granted the application for certiorari of a prosecutor against whom civil damages had been awarded pursuant to 42 U.S.C. § 1983 in a case arising out of the alleged intentional suppression of exculpatory information. Hilliard *949 v. Williams, 516 F.2d 1344 (6th Cir. 1975), vacated, 424 U.S. 961, 96 S.Ct. 1453, 47 L.Ed.2d 729 (1976), on remand, 540 F.2d 220 (6th Cir.1976). In Hilliard, the defendant was convicted of murder largely on the strength of "blood stains" found on items belonging to the defendant. The defendant maintained that the stains in question were not blood at all. Although the state had forensic evidence that the stains were not blood, the prosecution nevertheless proceeded to trial on the "blood stain" theory. The prosecuting attorney did not advise the defendant of an exculpatory FBI test report in his possession. The lower courts refused to grant absolute immunity to the prosecutor, on the theory that withholding exculpatory evidence was not within the scope of the prosecutor's duties. The United States Supreme Court vacated the damage award against the prosecutor and remanded the case to the Sixth Circuit for reconsideration in light of Imbler. On remand, the court of appeals directed dismissal of the charges in keeping with the directives in Imbler.
Since Imbler, the Supreme Court has twice revisited the issue of absolute prosecutorial immunity and has reiterated its view that immunity is warranted for conduct of prosecutors that is intimately associated with the judicial phase of the criminal process and for a prosecutor's acts in initiating a prosecution and in presenting the state's case. See, Buckley v. Fitzsimmons, 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993), and Burns v. Reed, 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). Federal courts have uniformly granted absolute prosecutorial immunity in Section 1983 cases involving conduct within the traditional scope of a prosecutor's responsibilities, even in instances of suppression of exculpatory information, and regardless of whether there is evidence of malice.[11] Similarly, state courts have followed the reasoning in Imbler and earlier cases and have applied the rule of absolute immunity to suits for malicious prosecution under state tort law.[12] In our own state, several circuit courts of appeal have relied on the reasoning of the United States Supreme Court to extend absolute prosecutorial immunity in suits alleging malicious prosecution.[13] The Fourth Circuit, on the other hand, has continued to follow the rule that prosecutors are entitled to only a qualified immunity. However, we note that in the first Fourth Circuit case to reach that holding, Crier v. New Orleans, 365 So.2d 35 (La.App. 4th Cir. 1978), the Fourth Circuit took notice of Imbler and concluded that the reasoning in Imbler supported a grant of absolute immunity to prosecutors. The Fourth Circuit refused to apply the Imbler rationale only because this court had not yet addressed the issue.[14]
*950 A determination that prosecutors are entitled to absolute immunity for conduct within the course and scope of their prosecutorial functions does not mean that a prosecutor will be immune from suit in all cases. Immunity is granted only in those instances where the function being served is advanced by the extension of immunity. For instance, in Buckley v. Fitzsimmons, 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993), the United States Supreme Court held that while the actions of a prosecutor that are intimately associated with the judicial phase of the criminal process and which occur in the course of a prosecutor's role as an advocate for the state are entitled to absolute immunity, where prosecutors act in an investigatory, administrative, ministerial or other role that has no functional tie to the judicial process, only a qualified immunity is afforded.[15]
We agree that a functional analysis of the role a prosecutor is fulfilling when the alleged misconduct occurs is the touchstone to determining the type of immunity available. We are persuaded that granting absolute immunity to prosecutors from malicious prosecution suits is appropriate when the activities complained of fall within the scope of the prosecutor's role as an advocate for the state and are intimately associated with the conduct of the judicial phase of the criminal process. In certain cases, determining whether the conduct complained of falls within the ambit of absolute immunity protection may not be an easy task. In this case, however, we are not faced with a difficult line drawing exercise.
La.Code of Crim. P. art. 61 provides:
Subject to the supervision of the attorney general, as provided in Article 62, the district attorney has entire charge and control of every criminal prosecution instituted or pending in his district, and determines whom, when, and how he shall prosecute.
In our view, the determination of what information is exculpatory and must be turned over to the defense clearly falls within the course and scope of a prosecutor's traditional duties. It is a determination intimately involved in the judicial phase of the criminal process and is an integral part of the prosecutor's responsibilities as an advocate for the state. Accordingly, we hold that under the circumstances of this case, David Paddison is entitled to absolute immunity from the charges of malicious prosecution made against him.
Our opinion in this case should in no way be construed as condoning the suppression of exculpatory information or any other form of prosecutorial misconduct. Criminal defendants who are convicted as a consequence of prosecutorial misconduct will be afforded post-conviction relief where appropriate. If misconduct is detected during the original trial, prosecutors are subject to sanctions pursuant to the inherent authority of the trial judge. Moreover, prosecutorial misconduct can be the basis of independent criminal charges against a prosecutor.[16] Misconduct can also rise to the level of justifying professional disciplinary proceedings. Finally, prosecutorial conduct, whether that of the District Attorney or his assistants, is subject to the ultimate test of public approval at the ballot box.
We deplore the use by prosecutors of methods that violate a defendant's rights or *951 otherwise fail to conform to professional ethics and the rules of law and procedure designed to safeguard our freedoms. However, the checks on prosecutorial misconduct already inherent in our justice system undermine the argument that the imposition of civil damages is the only way to insure the integrity of prosecutions. We are convinced that the interests of justice as a whole are best served by extending absolute immunity in cases of the type before us, even though it may result in the denial of an individual's potential recovery of money damages. Accordingly, we hold that a prosecutor acting within the scope of his prosecutorial duties as an advocate for the state is entitled to absolute immunity from suit for malicious prosecution as a consequence of conduct intimately associated with the judicial phase of the criminal process.
Our reasons for ruling make it unnecessary for us to consider that portion of the court of appeal's opinion which held that unresolved issues of fact precluded summary judgment. We therefore reverse the ruling of the court of appeal and reinstate the judgment of the trial court dismissing plaintiff's suit against David Paddison.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed. The judgment of the trial court granting David Paddison's motion for summary judgment is reinstated.
LEMMON, J., concurs and will assign reasons.
JOHNSON, J., dissents in part and will assign reasons.
NOTES
[*] Bleich, J. not on panel. Rule IV, Part 2, § 3.
[1] 458 So.2d 1284 (La.1984).
[2] 545 So.2d 1045 (La.1989).
[3] 579 So.2d 956 (La.1991).
[4] The Authorization to Dismiss indicates that the case was not retried because of the unavailability of witnesses and the evidentiary issues raised by the previously undisclosed material.
[5] Mr. Knapper also joined as a defendant District Attorney Harry F. Connick, claiming that Mr. Connick is liable under the theory of respondeat superior for the alleged torts of Mr. Paddison and for failure to train and supervise Paddison. Mr. Connick was not a party to the motion for summary judgment out of which this matter arises.
[6] 95-1377 (La.App. 4th Cir. 1/19/96); 668 So.2d 465.
[7] 96-0434 (La.4/8/96); 671 So.2d 327.
[8] See, e.g., Bogle v. Galanos, 503 So.2d 1217 (Ala.1987); State v. Superior Court of Arizona, 186 Ariz. 294, 921 P.2d 697 (App.1996); Culpepper v. Smith, 302 Ark. 558, 792 S.W.2d 293 (1990); Harmston v. Kirk, 216 Cal.App.3d 1410, 265 Cal.Rptr. 548 (1989); McDonald v. Lakewood Country Club, 170 Colo. 355, 461 P.2d 437 (1969); DeLaurentis v. City of New Haven, 220 Conn. 225, 597 A.2d 807 (Conn.1991); Lee v. Fowler, 94C-05-2, 1995 WL 270140, 1995 Del.Super. LEXIS 171 (Del. March 27, 1995); Stebbins v. Washington Metro. Area Transit Auth., 495 A.2d 741 (D.C.App.1985); Lloyd v. Hines, 474 So.2d 376 (Fla.App.1985); Holsey v. Hind, 189 Ga.App. 656, 377 S.E.2d 200 (1988); Weimann v. County of Kane, 150 Ill.App.3d 962, 104 Ill.Dec. 110, 502 N.E.2d 373 (1986); Foster v. Pearcy, 176 Ind.App. 672, 376 N.E.2d 1205 (1978), cert. denied, 445 U.S. 960, 100 S.Ct. 1646, 64 L.Ed.2d 235 (1980), superseded as to statements to the press in 270 Ind. 533, 387 N.E.2d 446 (1979); Burr v. City of Cedar Rapids, 286 N.W.2d 393 (Iowa 1979); McCollum v. Garrett, 880 S.W.2d 530 (Ky.1994); Whirty v. Lynch, 27 Mass.App.Ct. 498, 539 N.E.2d 1064 (1989), rev. denied, 405 Mass. 1204, 543 N.E.2d 21 (1989); Ingraham v. University of Maine at Orono, 441 A.2d 691 (Me.1982); Davis v. Eddie, 130 Mich. App. 284, 343 N.W.2d 11 (1983); Brown v. Dayton Hudson Corp., 314 N.W.2d 210 (Minn.1981); Ronek v. Gallatin County, 227 Mont. 514, 740 P.2d 1115 (1987), cert. denied, 485 U.S. 962, 108 S.Ct. 1226, 99 L.Ed.2d 426 (1988); Belcher v. Paine, 136 N.H. 137, 612 A.2d 1318 (1992); Fleming v. UPS, 255 N.J.Super. 108, 604 A.2d 657 (1992), cert. denied, ___ U.S. ___, 116 S.Ct. 139, 133 L.Ed.2d 85 (1995); Ryan v. State, 56 N.Y.2d 561, 450 N.Y.S.2d 179, 435 N.E.2d 396 (1982); State ex rel. Jacobs v. Sherard, 36 N.C.App. 60, 243 S.E.2d 184 (1978); Carlton v. Davisson, 104 Ohio App.3d 636, 662 N.E.2d 1112 (1995); Powell v. Seay, 553 P.2d 161 (Okla.1976); Beason v. Harcleroad, 105 Or.App. 376, 805 P.2d 700 (1991); Schroeck v. Pennsylvania, 26 Pa. Cmwlth. 41, 362 A.2d 486 (1976); Laird v. Chrysler Corp., 460 A.2d 425 (R.I.1983); Willett v. Ford, 603 S.W.2d 143 (Tenn.App.1979); Bradt v. West, 892 S.W.2d 56 (Tex.App.1994); Polidor v. Mahady, 130 Vt. 173, 287 A.2d 841 (1972); Collins v. King County, 49 Wash.App. 264, 742 P.2d 185 (1987), overruled on other grounds, Lutheran Day Care v. Snohomish County, 119 Wash.2d 91, 829 P.2d 746 (1992); Ford v. Kenosha, 160 Wis.2d 485, 466 N.W.2d 646 (1991); Cooney v. Park County, 792 P.2d 1287 (Wyo.1990), cert. granted, vacated, 501 U.S. 1201, 111 S.Ct. 2820, 115 L.Ed.2d 965 (1991), on remand, 845 P.2d 353 (Wyo.1992). But see, Orso v. City and County of Honolulu, 56 Haw. 241, 534 P.2d 489 (1975); Cashen v. Spann, 66 N.J. 541, 334 A.2d 8 (1975), (but see, Fleming v. UPS); Koepf v. County of York, 198 Neb. 67, 251 N.W.2d 866 (1977).
[9] In Moresi v. Dept. of Wildlife & Fisheries, 567 So.2d 1081 (La.1990), we dealt with the availability of a qualified immunity for state game wardens from prosecution under 42 U.S.C. § 1983 and under our state constitution. With respect to the state law claims we held: "The same factors that compelled the United States Supreme Court to recognize a qualified good faith immunity for state officers under § 1983 require us to recognize a similar immunity for them under any action arising from the state constitution." Id. at 1093.
[10] We note in this case that Mr. Knapper was tried in October, 1979, seventeen years ago. Defendant Paddison has claimed in prior proceedings that he gave his file to Mr. Knapper's lead defense counsel for review in response to a request for Brady information. Unfortunately, lead defense counsel is now deceased.
[11] See, e.g., Reid v. New Hampshire, 56 F.3d 332 (1st Cir.1995); Hill v. City of New York, 45 F.3d 653 (2d Cir.1995); Moore v. Valder, 65 F.3d 189 (D.C.Cir.1995); Carter v. Burch, 34 F.3d 257 (4th Cir.1994), cert. denied, ___, U.S. ___, 115 S.Ct. 1101, 130 L.Ed.2d 1068 (1995); Auriemma v. Montgomery, 860 F.2d 273 (7th Cir.1988), cert. denied, 492 U.S. 906, 109 S.Ct. 3215, 106 L.Ed.2d 565 (1989); Hammond v. Bales, 843 F.2d 1320 (10th Cir.1988); Williams v. Hartje, 827 F.2d 1203 (8th Cir.1987); Jones v. Shankland, 800 F.2d 77 (6th Cir.1986), cert. denied, 481 U.S. 1048, 107 S.Ct. 2177, 95 L.Ed.2d 834 (1987); Fullman v. Graddick, 739 F.2d 553 (11th Cir.1984); Ybarra v. Reno Thunderbird Mobile Home Village, 723 F.2d 675 (9th Cir.1984); Henzel v. Gerstein, 608 F.2d 654 (5th Cir.1979).
[12] See cases cited at footnote 8.
[13] Connor v. Reeves, 26,419 (La.App.2d Cir. 1/25/95); 649 So.2d 803, writ denied, 95-0771 (La.4/28/95); 653 So.2d 601. Dickerson v. Kemp, 540 So.2d 467 (La.App. 1st Cir.1989); Foster v. Powdrill, 463 So.2d 891 (La.App. 2d Cir.1985).
[14] It could be argued that the malice requirements in a suit for malicious prosecution are sufficient to protect prosecuting attorneys and the interests of the criminal justice system while still affording the potential for civil damages to a plaintiff who can prove that he has suffered damages as a consequence of prosecutorial misconduct. However, a similar argument was expressly rejected by the United State Supreme Court in Imbler. Id. at 424-27, 96 S.Ct. at 992-93. We agree that even with a heightened standard of proof and higher threshold requirements, qualified immunity would not afford prosecutors sufficient protection against the artful pleading of malice. Malice has been defined broadly and is a question of fact which must often be resolved by a jury. Miller v. East Baton Rouge Parish Sheriff's Department, 511 So.2d 446 (La.1987). The Fourth Circuit's conclusion in this case that questions of fact regarding malice remained unresolved amply demonstrates how difficult it is to obtain summary judgment in a case of this type. It is largely for that reason that absolute immunity has been viewed as the only practical means of insuring that prosecutors are able to fulfill their missions without the cloud of possible personal liability if the wrong call is made on an issue.
[15] In Buckley, 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993), the Court found that where prosecutors assist in the gathering of evidence before probable cause is established, such conduct is more akin to that of police officers, who are accorded only qualified immunity from civil damage suits. See also, Burns v. Reed, 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991), wherein the Court held that the act of giving advice to police officers on the existence of probable cause is not protected by absolute immunity. In Buckley, the Court made it clear that it is neither the magnitude of the harm nor the seriousness of the misconduct charged that affects immunity determinations. Rather, the focus is on the nature of the function being fulfilled at the time of the alleged misconduct. Id. at 269, 113 S.Ct. at 2613.
[16] In Imbler, the United States Supreme Court suggested that prosecutors guilty of misconduct may be punished criminally for the willful violation of constitutional rights under 18 U.S.C. § 242. In an appropriate case, prosecutorial misconduct might also be punishable pursuant to our state criminal statutes.