J^AMY, J.
The plaintiff filed suit against the sheriff and district attorney of Calcasieu Parish due to her detention on a warrant not withdrawn from a national database after the district attorney’s office rejected criminal charges against her. The district attorney filed an exception of no cause of action which was subsequently denied by the lower court as was a motion for summary judgment filed by the defendant sheriff. It is the district attorney’s exception which is addressed in this opinion. Both defendants sought supervisory writs in this court. Upon review, both applications were granted. However, the Louisiana Supreme Court granted the plaintiffs writ application and remanded the matter to this court for a full opinion.[1] We grant the | ^district attorney’s writ application seeking a reversal of the lower court’s denial of his exception of no cause of action.
Factual and Procedural Background
As explained in the companion opinion of Keller v. McElveen, 98-722 (La.App. 8 Cir. 6/2/99); 741 So.2d 804, this matter arises from the detention of the plaintiff, Karen E. Keller, in Harrison County, Mississippi, following a traffic stop on August 20, 1995, by a sheriffs deputy of that county.[2] During the stop, the deputy made an inquiry *645 of the National Crime Information Center (NCIC) computer, and found that Ms. Keller had an outstanding warrant issued in Calcasieu Parish. Ms. Keller was held overnight in a detention facility in Mississippi. The affidavit of Ernest Childress, Warrants Division Supervisor at the Calca-sieu Parish Sheriffs Department indicates that the Harrison County authorities contacted the sheriffs department regarding the warrant and that the Calcasieu Parish District Attorney’s Office was contacted in an attempt to verify the warrant. According to the affidavit, the district attorney’s office informed the sheriffs department that the charges for which the warrant was issued had been rejected on August 24, 1994. The sheriffs department then contacted the Harrison County authorities informing them that the charges had been refused and also contacted the NCIC and canceled the outstanding warrant entry. Ms. Keller was released on August 21, 1995.
| aAs a result of this detention, Ms. Keller filed suit on August 16, 1996 against Wayne F. McElveen, in his capacity as Sheriff of Calcasieu Parish, and Samuel Ivey, in his capacity as Chief of Police for the City of Lake Charles, Louisiana. In a supplemental and amending petition, the plaintiff named Rick Bryant, in his capacity as District Attorney for the Fourteenth Judicial District Court in and around Cal-casieu Parish, as a defendant. In this supplemental petition, she alleged, in part, as follows:
“Upon information provided by Defendant, WAYNE F. MCELVEEN, Plaintiff is informed and believes that notwithstanding the original exculpatory evidence to the contrary which was provided to Plaintiff shortly prior to the filing of the original petition herein, Defendant, RICK BRYANT, issued a fugitive warrant to the Calcasieu Parish Sheriff commanding the arrest of Plaintiff, KAREN E. KELLER, and then failed to withdraw the issuance of said order, after he decided not to prosecute the charges against the Plaintiff, causing and/or contributing to the fault of the other Defendants, WAYNE F. MCEL-VEEN, Sheriff, and SAMUEL IVEY, Chief of Police, Lake Charles, Louisiana, in failing to remove the fugitive warrant notation against Plaintiff, KAREN E. KELLER, on the NCIC computer system.”
The plaintiff sought recovery for past and future medical expenses as well as general damages.
Defendant McElveen filed a motion for summary judgment asserting that the sheriffs department had no information indicating that the charges had been refused by the district attorney until the time of Ms. Keller’s detention. Having no independent authority to remove a fugitive’s name from the NCIC, the sheriff asserted that no genuine issue of material fact existed as to the liability of his department. Further, the district attorney filed an exception of no cause of action asserting that any action/inaction of his department was performed in the furtherance |4of his prosecutorial function and, therefore, these actions aré protected by prosecutorial immunity.
The sheriffs motion for summary judgment and the district attorney’s exception were originally argued before the lower court in February 1998, but were not decided at that time as the trial judge concluded that development of the factual background was necessary. The motion and exception were reurged before the lower court in April 1998. Additionally, the court heard the motion for summary judgment filed by the chief of police. Following the hearing, the trial court granted the motion for summary judgment filed by the chief of police, but denied both the motion for summary judgment filed by the sheriff and the exception of no cause of action filed by the district attorney.
Following the hearing, the sheriff and the district attorney each filed a writ application seeking review of the lower court’s decision. A panel of this court granted *646 both writ applications in July 1998.[3] Upon subsequent application, the ^Louisiana Supreme Court used the following language in granting the plaintiffs writ application with that court: “Granted. Case is remanded to the court of appeal for briefing, argument, and opinion.” See Keller v. McElveen, 98-2327 (La.11/25/98); 729 So.2d 581. Upon instruction from the supreme court, we consider the defendants’ original writ applications anew. As the two writ applications bear separate docket numbers and have not been consolidated, we will address the substance of each application separately. The instant matter involves the writ application filed by District Attorney Bryant.[4]
Discussion
Exception of No Cause of Action filed by District Attorney Bryant
District Attorney. Bryant maintains that the lower court erred in denying his exception of no cause of action. He asserts that any action sued upon by the plaintiff, was one within the prosecutorial function of a district attorney and, therefore, he is afforded absolute immunity from such a suit. The defendant characterizes the plaintiffs suit as one for either false imprisonment or malicious/negligent prosecution. In his original application to this court, he states that the plaintiff alleges that he failed to properly issue his decision to reject the charges. The district attorney then focuses on the lower court’s conclusion that the reporting of the rejection to the sheriffs department is an administrative function and one that affords the prosecutor | ¿with only qualified immunity. He contends this determination by the trial court was erroneous. District Attorney Bryant argues that since a decision to accept/reject charges is clearly within the prosecutorial function, the reporting of that decision to outside authorities is necessarily a prose-cutorial function since, absent this communication, the rejection has not been completed as it is known only to those within the district attorney’s office. Alternatively, District Attorney Bryant argues that the lower court’s denial of the exception of no cause of action is a violation of the separation of powers doctrine. Because we conclude that the plaintiff failed to state a recoverable cause of action against the district attorney, we do not reach this alternative argument.
In Everything on Wheels v. Subaru South, 616 So.2d 1234, 1235 (La.1993), the Louisiana Supreme Court explained that an exception of no cause of action is used to “test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading.” As La.Code Civ.P. art. 931 prohibits the introduction of evidence in consideration of an exception of no cause of action, “the court reviews the petition and accepts well pleaded allegations of fact as true, and the issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief *647 therein.” Everything on Wheels, 616 So.2d at 1235. Our review of the petition in this matter reveals that the lower court erred in concluding that a recoverable cause of action was advanced in the pleading. We find that any potential cause of action is prohibited under these circumstances due to the doctrine of prosecutorial immunity. Thus, we turn to a consideration of this jurisprudential rule.
|7In Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), the United States Supreme Court discussed the concept of prosecutorial immunity in the context of a 42 U.S.C. § 1983 suit and concluded that the well-established absolute immunity enjoyed at common law extended to prosecutors in that context. In considering the boundaries of that liability, the Court stated that:
We agree with the Court of Appeals that respondent’s activities tvere intimately associated with the judicial phase of the criminal process, and thus were functions to which the reasons for absolute immunity apply with full force. We have no occasion to consider whether like or similar reasons require immunity for those aspects of the prosecutor’s responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate. We hold only that in initiating a prosecution and in presenting the State’s case, the prosecutor is immune from a civil suit for damages under § 1983.
Imbler, 424 U.S. at 420-31, 96 S.Ct. at 995 (emphasis added).
In Buckley v. Fitzsimmons, 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993), the Supreme Court continued the discussion of prosecutorial immunity in 42 U.S.C. § 1983 suits which began in Imbler and further delineated the types of activities that are protected by absolute immunity. Making clear that not all activities are absolutely protected, the Court stated that:
In determining whether particular actions of government officials fit within a common-law tradition of absolute immunity, or only the more general standard of qualified immunity, we have applied a “functional approach,” see, e.g., Burns, 500 U.S., at 486, 111 S.Ct., at 1939, which looks to “the nature of the- function performed, not the identity of the actor who performed it,” Forrester v. White, 484 U.S., [219] at 229, 108 S.Ct., [538] at 545[, 98 L.Ed.2d 555 (1988)].
Id. at 269, 113 S.Ct. at 2613. The Court went on to discuss their earlier decision in Imbler in which, of course, they found absolute immunity for the initiation and prosecution of a criminal matter and its application in Burns v. Reed, 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547 | »(1991). In Bums, the Court concluded that a prosecutor was absolutely immune for his actions at a probable-cause hearing, but that no such immunity existed for advising the police during the investigation of a criminal matter. The Court concluded that immunity was not extended because such a role was not “intimately connected” to the judicial phase of a case and, furthermore, there was no common-law basis for such an extension. Discussing this previous application of Imbler, the Court stated that:
A prosecutor’s administrative duties and those investigatory functions that do not relate to an advocate’s preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity ...
On the other hand, as the function test of Imbler recognizes, the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor. Qualified immunity ‘“represents the norm’ ” for executive officers ... so when a prosecutor “functions as an administrator rather than as an officer of the court” he is entitled only to qualified immunity.
Buckley, 509 U.S. at 273, 113 S.Ct. at 2615-16 (citations omitted). When these principles were applied to the factual situation presented by Buckley, the Court con- *648 eluded that the prosecutor in that case was not absolutely immune for his actions while investigating a footprint allegedly made by the defendant since this action was administrative in nature. Further, the Court concluded that only qualified immunity was available for out-of-court statements made by a prosecutor at a press conference announcing the indictment instituting the matter.
Not only do we find the above-related United States Supreme Court cases instructive in this matter, but our review of this state’s jurisprudence indicates that the Louisiana Supreme Court has adopted the federal standard explained above for | ntort claims arising in state court. See Knapper v. Connick, 96-0434 (La.10/15/96); 681 So.2d 944. In Knapper, 96-0434; 681 So.2d 944, the Louisiana Supreme Court considered Imbler and found it applicable in a tort suit for malicious prosecution. In that case, the alleged suppression of exculpatory evidence was at issue. The court concluded that when the Imbler principle was applied, “the determination of what information is exculpatory and must be turned over to the defense clearly falls within the course and scope of a prosecutor’s traditional duties.” Id. at p. 11; 950.
Prior to Knapper, the first circuit considered Imbler and found the protection of absolute immunity discussed by the United States Supreme Court applicable in a suit where a prosecutor was sued for malicious prosecution for the allegedly excessive time period between investigation and indictment. The first circuit concluded that “the decision to issue a detainer on an out-of-state prisoner pending the indictment of the prisoner for crimes committed in the state of Louisiana and the decision not to extradite the prisoner are activities which are typically characterized as official functions of the prosecutor and are clearly not those types of activities considered administrative or investigative.” Dickerson v. Kemp, 540 So.2d 467, 470 (La.App. 1 Cir. 1989).
The fourth circuit has also addressed the matter and found that absolute immunity existed in a case where a defendant was held in custody for extradition to Cleveland, Ohio when the prosecutor had knowledge that Cleveland refused extradition. See Johnson v. Foti, 537 So.2d 232 (La. App. 4 Cir.1988), unit denied, 538 So.2d 591 (La.1989). In Johnson, which was decided after a full trial on the merits, the second circuit stated as follows: “We have no basis to differentiate | Wbetween the various functions of the District Attorney’s office. The D.A.’s administrative functions are intricately related and interwoven with his prosecution efforts. There can be no prosecution without the attendant paperwork.” Id. at 232 (emphasis added). The factual situation presented in Johnson appears to be somewhat analogous to the instant matter since the detention occurred due to a problem with a deviation from normal office procedures. However, the fourth circuit did not apply the federal standard explained in Imbler, but rather, found that an allegation of malice was necessary for a cause of action against a prosecutor. Finding no such allegation, the court concluded that there could be no liability. While this requirement of an allegation of malice can now be seen to be contrary to the supreme court’s adoption of the federal rule in Knapper, an opinion rendered several years after Johnson, we consider persuasive the fourth circuit’s observation that many functions appearing to be administrative are, in fact, interwoven with prosecutorial functions.
The instant matter, too, involves paperwork attendant to the dismissal of a charge. While this paperwork or communication is incrementally attenuated from the actual decision to dismiss the charges, a function undoubtedly prosecutorial, we conclude that it is still an extension of the prosecutorial duty and not the type of administrative function that does not afford absolute immunity. The communication is intimately associated with the function of a prosecutor, as a prosecutor, in a *649 criminal matter. As the prosecutor is the only official who can make this communication, the district attorney is clearly acting as a prosecutor when performing this function rather than as an administrator. In sum, we conclude that h ¶ prosecutors are afforded the same protection in terminating a prosecution as they are in initiating one. See Imbler, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128. Thus, we conclude that the lower court erred in denying District Attorney Bryant’s exception of no cause of action.[5]
DECREE
The judgment of the lower court denying the exception of no cause of action filed by Defendant District Attorney Rick Bryant is reversed. The exception of no cause of action is maintained and made peremptory. The claims alleged in the petition instituting this matter are dismissed as they relate to Defendant Bryant. Costs of this proceeding are assigned to the plaintiff, Karen E. Keller.
WRIT GRANTED AND MADE PEREMPTORY.

. Although jointly remanded by the supreme court, the writ applications of the sheriff and the district attorney were not consolidated, but are treated as companion cases stemming from a single case and sharing a common factual background. For a separate discussion of the sheriff’s writ application, see Keller v. McElveen, 98-722 (La.App. 3 Cir. 6/2/99); 741 So.2d 804.

. Although the writ application filed by the District Attorney Bryant is substantively addressed in this opinion, we rely, in part, upon our rendition of the factual and procedural background developed in the companion matter addressing the Sheriff's motion for summary judgment and reproduce them herein. See Keller, 98-722; 741 So.2d 804.

. The language granting the writ application of District Attorney Bryant is as follows:
WRIT GRANTED AND MADE PEREMPTORY: The District Attorney has absolute immunity in this case. A prosecutor acting within the scope of his prosecutorial duties as an advocate for the state is entitled to absolute immunity from a suit for damages as a consequence of conduct intimately associated with the judicial phase of the criminal process. Knapper v. Connick, 96-434 (La. 10/15/96); 681 So.2d 944. A decision not to prosecute falls within the course and scope of a prosecutor’s traditional duties. La.Code Crim.P. art. 61; Dickerson v. Kemp, 540 So.2d 467 (La.App. 1 Cir.1989). Whether a district attorney has a duty to communicate to anyone a decision not to prosecute is not a question before us; however, if such a duty exists it is intimately associated with the judicial phase of the criminal process and he is entitled to absolute immunity from suit for damages based on a failure to perform the duty. The exception of no cause of action or right of action is maintained and the suit against the District Attorney is hereby dismissed at plaintiff's cost.

. For discussion of the writ application filed by Sheriff McElveen, see Keller, 98-722; 741 So.2d 804.

. We note that, although we have concluded that the actions/inactions complained of here were within the district attorney’s prosecuto-rial function, absent an application of absolute immunity, the affirmative defense of qualified immunity applicable to public officials would remain at issue. See Moresi v. Dept. of Wildlife & Fisheries, 567 So.2d 1081 (La.1990).