Minnette MONTEGUT, et al.

v.

WILLIAMS COMMUNICATIONS, INC.

No. Civ.A. 99–1858.

United States District Court,
E.D. Louisiana.

June 23, 2000.

---

**32.**  Rec. Doc. 227.

Thomas J. Malik, Law Offices of Thomas J. Malik, Laplace, LA, for Minnette M. Montegut, John F. Montegut, Elizabeth DuPont, Christy Montegut, J. Oswald Montegut, Roy C. Montegut, Walton Montegut, Leo Montegut, plaintiffs.

Betsy J. Barnes, Richard lee Root, Barnes & Root, L.L.C., New Orleans, LA, for Jan E. Sutton, plaintiff.

Galen S. Brown, M. Lizabeth Talbott, Lamothe & Hamilton, New Orleans, LA, for Williams Communications, Inc., defendant.

Betsy J. Barnes, Richard Lee Root, Barnes & Root, L.L.C., New Orleans, LA, for Alfonse B. Sutton, movant.

## ORDER AND REASONS

BARBIER, District Judge.

Following oral arguments held in open court on February 2, 2000, this Court dismissed all the pending "federal question" claims alleged in the captioned suit. However, it declined to remand this case to state court because an issue remained as to whether diversity jurisdiction was present over this removed action. Accordingly, the Court instructed the parties to brief the question whether the requirements of 28 U.S.C. § 1332 were met, and additionally, what grounds, if any, existed justifying the exercise of supplemental jurisdiction over the remaining claims. The Court, having reviewed the submissions of the parties, finds that this matter should be remanded to state court for the reasons that follow.

## *BACKGROUND*

In October, 1998, eight of the nine plaintiffs herein, members of the Montegut family (the Montegut plaintiffs), filed suit in state court against defendant claiming that defendant Williams (f/k/a Vyvyx Communications) failed to obtain their consent to install fiber optic cables along railroad rights-of-way, on land allegedly owned by plaintiffs but subject to a servitude granted to ICG railroad. On January 4, 1999, defendant filed an answer and reconventional demand, seeking to expropriate the property if plaintiffs were successful in the principal demand. The answer also included a reconventional demand against a third-party, Marjorie Sutton, who also claims an undivided interest in the land upon which the cable was installed. On March 5, 1999, the legally appointed curator for Marjorie Sutton,[1] filed a petition against Vyvyx which incorporated an answer to Williams' reconventional demand against Sutton (the "Sutton Petition"). The Sutton Petition contains the following allegation, which was not made by any of the Montegut plaintiffs:

> Plaintiff alleges that defendants' conduct is in violation of R.S. 51:1401 *et seq.* [Louisiana Unfair Trade Practices Act, hereinafter, "LUTPA"], and that the defendants' conduct in violating and taking plaintiff's property without notice, permission and compensation is both an unfair and deceptive business practice

---

1. Mrs. Sutton has since deceased and this action is being pursued by her estate.

entitling plaintiff to damages and attorney's fees.

Sutton Petition, ¶ 9.

Subsequently, on April 30, 1999, Sutton filed a First Supplemental and Amending Petition, seeking to make the action a class action brought on behalf of herself and similarly situated property owners.

In its memorandum addressing diversity jurisdiction, counsel for Williams[2] avers that it is present because the parties are citizens of different states and the $75,000 amount in controversy is met. Williams argues that at least $75,000 is in controversy because the court should aggregate the following sums: $47,500, representing the value of the plaintiffs' property in question, which may be considered in total because the plaintiffs are seeking to enforce an undivided interest; at least $27,-500, representing attorney's fees which Williams argues Sutton would be entitled to if successful in her LUTPA claim; unspecified additional amounts, representing attorney's fees which would be due to the Montegut plaintiffs for attorney's fees if successful in a LUTPA claim, although counsel acknowledges that those plaintiffs have made no such claim; and $74,000, representing the amount sought by Sutton in her prayer for relief as attorney's fees for representing the class Adding the above, Williams contends that the amount in controversy exceeds $75,000.

### LEGAL DISCUSSION

#### 1. Diversity Jurisdiction

■ In determining the amount in controversy in an alleged class action, courts generally look only to the value of the claims of the class representative. *In re Abbott Laboratories*, 51 F.3d 524, 527 (5th Cir.1995). However, when "two or more plaintiffs unite to enforce a single

title or right in which they have a common and undivided interest," the aggregation of their damages is permitted for purposes of determining the amount in controversy. *Snyder v. Harris*, 394 U.S. 332, 335, 89 S.Ct. 1053, 1056, 22 L.Ed.2d 319 (1969). It is also true that when class claims are brought under a statute that contains a provision for the award of attorney's fees as a separate element of damages, the entire class fee award may be imputed to the class representative. *Abbott Laboratories*, 51 F.3d at 527. However (as this Court has previously held), because LUTPA claims may only be brought by an individual, and cannot be brought in a representative capacity, there are no class LUTPA fees which may be attributed to a class representative. La. R.S. 51:1409; *Dixon v. Ford Motor Credit Co.*, 1998 WL 914260 (E.D.La.). Finally, class fee awards that are not made as a separate element of damages pursuant to a statute are not imputed to the class representative. *Jones v. Valvoline Co.*, 1999 WL 319215, *2 (E.D.La.). Accordingly, under the foregoing statement of the law, the following amounts may be aggregated to determine if the amount in controversy is met: $47,500, representing the value of the indivisible claim made by the class members; and the value of any attorney's fees Sutton may be entitled to for her individual LUTPA claim.

■ The problem in this case, however, is that while plaintiffs are seeking to enforce an indivisible right, apparently valued at $47,500, they have no LUTPA claim that would entitle any of them to statutory attorney's fees, notwithstanding the allegations of paragraph nine of the Sutton petition.

The LUTPA provides in part that "[u]nfair methods of competition and unfair or

2. While the Court refers to defendant's arguments throughout for the sake of convenience, the Court acknowledges that counsel for plaintiff Sutton has advanced arguments which parallel those of defendant and contends that federal subject matter jurisdiction is present. Of course, it is black letter law that the parties may not consent to federal subject matter jurisdiction where it is lacking. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982).

deceptive acts or practices **in the conduct of any trade or commerce** are hereby declared unlawful." La. R.S. 51:1405(A) (emphasis added). " 'Trade' or 'commerce' " is defined in the LUTPA as "the advertising, offering for sale, sale, or distribution of any services and any property, corporeal or incorporeal, immovable or movable, and any other article, commodity, or thing of value wherever situated, and includes any trade or commerce directly or indirectly affecting the people of the state." La. R.S. 51:1402(9). Accordingly, courts have restricted the cause of action to consumers, business competitors, and potential business competitors. *Comment, Louisiana Unfair Trade Practices Act: Broad Language and Generous Remedies Supplemented by a Confusing Body of Case Law,* 41 Loy. L.Rev. 759, 761 (1996).

Plaintiffs' claim herein is not one for the advertising, offering for sale, sale, or distribution of any services or any property. Rather, it is essentially one for trespassing. Further, vis-a-vis this defendant, plaintiffs are not consumers, business competitors, or potential business competitors. Accordingly, the injury they complain of is not one that the LUTPA was enacted to prevent, and lacking any LUTPA claim, plaintiffs are not entitled to any fees under that statute. Thus, the value of plaintiffs suit is $47,500, well below the amount in controversy requirement of § 1332, and diversity jurisdiction is absent.[3]

**2.** *Supplemental Jurisdiction*

Defendant also argues that the Court should exercise supplemental jurisdiction over the pendent state claims which remain following the dismissal of plaintiffs' federal claims.

■ Title 28 U.S.C., section 1367 provides in pertinent part:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution....

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection

(a) if-

(1) the claim raises a novel or complex issue of State law;

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;

(3) the district court has dismissed all claims over which it has original jurisdiction; or

(4) in exceptional circumstances there are other compelling reasons for declining jurisdiction.

The Supreme Court in *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), held that the "justification for pendent jurisdiction lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them." *Guzzino v. Felterman,* 191 F.3d 588, 594. (5th Cir.1999) (quoting *Gibbs* ). "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even

---

**3.** Even if the Court were to attribute LUTPA attorney's fees to the named plaintiff, the value of the LUTPA claim probably would not exceed the value of the property ($47,500), and a fair fee would probably not exceed a third of that figure (approximately $14,264). Adding these amounts together yields $61,-764, which still does not meet the amount in controversy requirement.

**500**

though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id.* The *Gibbs* test must be applied on a case-by-case basis, and when the facts of an individual case indicate that extensive pretrial preparation has been conducted in federal court which would have limited utility in state court, a federal district court may abuse its discretion in remanding the case on the eve of trial. See *Newport Ltd. v. Sears, Roebuck and Co.,* 941 F.2d 302 (5th Cir.1991). However, the "general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed." *Parker & Parsley Petroleum v. Dresser Indus.,* 972 F.2d 580, 585 (5th Cir.1992).

■ In the instant case, all federal claims have been dismissed, and pre-trial preparation has largely been limited to addressing the jurisdiction issue. In fact, no trial dates or other deadlines have been established. Thus, in the absence of any valid federal claims and any justification stemming from judicial economy concerns or issues of convenience or fairness to litigants, which might be present if this litigation were more advanced, the Court finds that it should not needlessly make decisions concerning state law, and pursuant to 28 U.S.C. § 1367(c)(3), it declines to exercise supplemental jurisdiction. Accordingly;

**IT IS ORDERED** that this matter should be and is hereby **REMANDED** to the 40th Judicial District Court for the Parish of St. John the Baptist.