JUDGE TERRI F. LOVE
This application for supervisory review arises from petitions filed by cab drivers against Uber drivers alleging violations of the Louisiana Unfair Trade Practices Act. Following supplementation of the original petition, the Uber drivers filed an exception of no cause of action, which the trial court denied. The Uber drivers sought our supervisory review. This Court denied the writ, and the Uber drivers sought review from the Louisiana Supreme Court. The Supreme Court remanded the matter for full briefing, oral argument, and opinion.
This Court considered the matter en banc and finds that the trial court did not err by denying the Uber drivers' exception of no cause of action because the cab drivers set forth a cause of action. Thus, the application for supervisory review is denied.
FACTUAL BACKGROUND AND PROCEDURAL HISTORY
A group of cab drivers ("Cabbies") filed a Petition Based Upon Unfair Trade Practices, Request for Class Certification and *452 Request for Injunctive Relief against a group of Uber drivers ("Ubers") alleging that they were operating in violation of the Louisiana Unfair Trade Practices Act ("LUTPA"). The Cabbies contended that the Ubers' violations of the Louisiana Motor Vehicle Safety Law, the Louisiana Driver's License Law, and other municipal ordinances constituted unfair trade practices.
The Ubers filed Exceptions of No Cause of Action and No Right of Action. The trial court granted the Exception of No Cause of Action as to the Cabbies' LUTPA claims, but denied the Exception of No Right of Action regarding the alleged violations of the Louisiana Driver's License Law. This Court and the Louisiana Supreme Court denied writs on that judgment. Green v. Garcia-Victor , 16-0447, unpub. (La. App. 4 Cir. 5/31/16), writ denied , 16-1249 (La. 10/28/16), 208 So.3d 379.
The Cabbies filed a First Supplemental and Amended Petition asserting additional violations of municipal ordinances to establish liability pursuant to LUTPA.[2] The Cabbies then filed a Second Amending, Supplemental and Restated Petition alleging that the Ubers performed the same work as the Cabbies, who have commercial driver's licenses, but were not subject to the same regulatory requirements, which resulted in disparate treatment by the City of New Orleans. The Cabbies contended that the Ubers: (1) accepted passengers for cash without the Uber app; (2) staged and used cab stands; (3) accepted fares to and from the airport without authorization; (4) failed to notify Uber (the Transportation Network Company "TNC")[3] and its insurer of accidents; (5) transported passengers without a chauffeur's license; and (6) prohibited cabs from picking up and dropping off customers at the Voodoo Experience Music Festival. The Cabbies further asserted that the Ubers were engaging in illegally providing transportation services for hire, and that their non-compliance with state regulatory rules resulted in unfair competition pursuant to LUTPA. Moreover, the Cabbies averred that they "suffered an ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by Defendants of an unfair and unlawful trade practice in violation of Louisiana Revised Statute § 51:1405." They asserted that they suffered "harm, injuries, and damages, including loss of income, relevant market share, business reputation, goodwill, and attorneys' fees and costs." The Cabbies also alleged the following class of defendants, for purposes of class action: "All UberX drivers operating in New Orleans during the time of April 16, 2015 through the present."
Subsequently, the Ubers filed an Exception of No Cause of Action regarding the Second Amending, Supplemental and Restated Petition. The trial court denied the exception and stated the petition, as written, sufficiently stated a cause of action. The Ubers sought supervisory review from this Court. This Court denied writs. Green v. Garcia-Victor , 17-0695, unpub. (La. App. 4 Cir. 11/13/17). The Louisiana Supreme Court granted writs and remanded *453 the matter "for briefing, argument, and full opinion." Greekv. Garcia-Victor , 17-2071 (La. 02/02/18), 233 So.3d 614. This Court heard the matter en banc on April 18, 2018.
STANDARD OF REVIEW
"Questions of law are reviewed by the appellate court under the de novo standard of review." Cosey on behalf of Hilliard v. Flight Acad. of New Orleans, LLC , 17-0364, p. 3 (La. App. 4 Cir. 10/25/17), --- So.3d ----, ----, 2017 WL 4803829, *3. "Exceptions of no cause of action present legal questions, which are reviewed using the de novo standard of review." O'Dwyer v. Edwards , 08-1492, p. 3 (La. App. 4 Cir. 6/10/09), 15 So.3d 308, 310.
NO CAUSE OF ACTION
"An exception is a means of defense, other than a denial or avoidance of the demand, used by the defendant, whether in the principal or an incidental action, to retard, dismiss, or defeat the demand brought against him." La. C.C.P. art. 921. An exception of no cause of action is a peremptory exception. La. C.C.P. art. 927(A). "The function of the peremptory exception is to have the plaintiff's action declared legally nonexistent, or barred by effect of law, and hence this exception tends to dismiss or defeat the action." La. C.C.P. art. 923. "On the trial of the peremptory exception pleaded at or prior to the trial of the case, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition." La. C.C.P. art. 931. However, "[n]o evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action." La. C.C.P. art. 931. "The burden of demonstrating that the petition states no cause of action is upon the mover." 831 Bartholomew Investments-A, L.L.C. v. Margulis , 08-0559, p. 10 (La. App. 4 Cir. 9/2/09), 20 So.3d 532, 538.
"The questioned [sic] posed by an exception of no cause of action is 'whether the law provides a remedy against the particular defendant.' " 2400 Canal, LLC v. Bd. of Sup'rs of Louisiana State Univ. Agr. & Mech. Coll. , 12-0220, pp. 6-7 (La. App. 4 Cir. 11/7/12), 105 So.3d 819, 825, quoting Badeaux v. Southwest Computer Bureau, Inc. , 05-0612, 05-0719, p. 7 (La. 3/17/06), 929 So.2d 1211, 1216-17. "An exception of no cause of action tests 'the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading.' " Moreno v. Entergy Corp. , 10-2281, p. 3 (La. 2/18/11), 62 So.3d 704, 706, quoting Everything on Wheels Subaru, Inc. v. Subaru South,Inc. , 616 So.2d 1234, 1235 (La. 1993). "In deciding an exception of no cause of action a court can consider only the petition, any amendments to the petition, and any documents attached to the petition." 2400 Canal, LLC , 12-0220, p. 7, 105 So.3d at 825. "A court cannot consider assertions of fact referred to by the various counsel in their briefs that are not pled in the petition." Id. "The grant of the exception of no cause of action is proper when, assuming all well pleaded factual allegations of the petition and any annexed documents are true, the plaintiff is not entitled to the relief he seeks as a matter of law." Id. Further, "any doubt must be resolved in the plaintiffs' favor." Id.
"Louisiana has chosen a system of fact pleading." 831 Bartholomew , 08-0559, p. 9, 20 So.3d at 538. "Therefore, it is not necessary for a plaintiff to plead the theory of his case in the petition." Id. , 08-0559, pp. 9-10, 20 So.3d at 538. "However, the mere conclusions of the plaintiff unsupported by facts does [sic] not set forth a *454 cause of action." Id. , 08-0559, p. 10, 20 So.3d at 538.
The Louisiana Supreme Court reiterated the limitations placed upon the courts when reviewing a trial court's ruling on an exception of no cause of action. "The limited function of an exception of no cause of action is to determine whether the law provides a remedy to anyone assuming that the facts plead in the petition will be proven at trial. In making that limited determination, 'all doubts are resolved in plaintiff's favor.' " Farmco, Inc. v. W. Baton Rouge Par. Governing Council , 01-1086, p. 1 (La. 6/15/01), 789 So.2d 568, 569, quoting 1 Frank L. Maraist & Harry T. Lemmon, Louisiana Civil Law Treatise : Civil Procedure § 6.7(2)(1999) (emphasis added).
LUTPA
Louisiana's "Unfair Trade Practices and Consumer Protection Law" provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." La. R.S. 51:1405(A). La. R.S. 51:1409(A) provides, in pertinent part:
Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405, may bring an action individually but not in a representative capacity to recover actual damages.
"Because of the broad sweep of this language, 'Louisiana courts determine what is a LUTPA violation on a case-by-case basis.' " Quality Envtl. Processes, Inc. v. I.P. Petroleum Co., Inc. , 13-1582, p. 21 (La. 5/7/14), 144 So.3d 1011, 1025, quoting Keith E. Andrews, Comment, Louisiana Unfair Trade Practices Act: Broad Language and Generous Remedies Supplemented by a Confusing Body of Case Law , 41 Loy. L.Rev. 759, 762 (1996). The Louisiana Supreme Court "has consistently held that in establishing a LUTPA claim, a plaintiff must show that 'the alleged conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious.' " Quality Envtl. Processes , 13-1582, p. 21, 144 So.3d at 1025, quoting Cheramie Services, Inc. v. Shell Deepwater Prod. , 09-1633, p. 10 (La. 4/23/10), 35 So.3d 1053, 1059. "[T]he range of prohibited practices under LUTPA is extremely narrow." Cheramie , 09-1633, p. 11, 35 So.3d at 1060. "LUTPA prohibits only fraud, misrepresentation, and similar conduct, and not mere negligence." Quality Envtl. Processes , 13-1582, p. 21, 144 So.3d at 1025.
"LUTPA provides a cause of action both for trade practices which are 'unfair' and those which are 'deceptive.' " Jefferson v. Chevron U.S.A. Inc. , 97-2436, p. 13 (La. App. 4 Cir. 5/20/98), 713 So.2d 785, 792. "An act is not required to be both unfair and deceptive." Id. "A practice is unfair when it offends established public policy and when the practice is unethical, oppressive, unscrupulous, or substantially injurious." Id. "A trade practice is 'deceptive' for purposes of LUTPA when it amounts to fraud, deceit or misrepresentation." Id. , 97-2436, p. 13, 713 So.2d at 793. "LUTPA does not prohibit sound business practices, the exercise of permissible business judgment or appropriate free enterprise transactions." 831 Bartholomew , 08-0559, p. 11, 20 So.3d at 539. "The LUTPA has not been construed as forbidding 'a business to do what everyone knows a business must do: make money. Businesses in Louisiana are still free to pursue profit, even at the expense of competitors, so long as the means used are not egregious.' "
*455 JCD Mktg. Co. v. Bass Hotels & Resorts, Inc. , 01-1096, p. 13 (La. App. 4 Cir. 3/6/02), 812 So.2d 834, 842, quoting Turner v. Purina Mills, Inc. , 989 F.2d 1419, 1422 (5th Cir. 1993).
CABBIES' LUTPA CAUSE OF ACTION AGAINST UBERS
The Ubers contend that the trial court erred because the Cabbies "failed to allege facts establishing that any individual plaintiff suffered any damages as a result of any specific act by any individual defendant" and "because alleged actions by Defendants do not violate any law." The Ubers also maintain that "each individual defective cause of action ... is based on a separate transaction or occurrence" and should be dismissed.
The Cabbies have asserted that they have a cause of action pursuant to LUTPA through the Ubers' actions in violating city ordinances and state regulations. The Cabbies assert that various Ubers violated the following ordinances and regulations: (1) Ordinance Article XV, Sec. 162-1724, which prohibits accepting passengers for cash without the UBER app, i.e., street hails; (2) Ordinance Article XV, Sec. 162-1735, which prohibits staging and using cab stands; (3) Ordinance Article XV, Sec. 162-1735, which prohibits accepting fares to and from the airport without authorization; (4) Ordinance Article XV, Sec. 162-1715, which requires all TNC vehicles to be inspected annually by a state certified mechanic; (5) Ordinance Article XV, Sec. 162-1713, which requires notification to the TNC and its insurer of accidents and undergoing a drug test within twenty-four hours after an accident; (6) Ordinance Article VII, Sec. 150-985, which concerns the payment of occupational license fees and taxes; (7) La. R.S. 32:402 et seq., the driver's license statute; and (8) La. R.S. 32:861, the minimum liability insurance limits statute. The Cabbies also assert that the Ubers conspired with others to prohibit taxis from picking up and dropping off customers at the Voodoo Experience music festival.
First, we note that the Ubers and the Cabbies are subject to differing regulations. As this Court noted in Rasier , 16-0930, pp. 2-3, 222 So.3d at 810-11 :
In 2015, the City passed a series of laws permitting TNCs to operate within the parish. A TNC is an organization "that connects passengers with drivers using their personal vehicle for purposes of for-hire transportation services by means of a TNC digital network." City Code Section 162-1700. TNC services comprise "the transportation of a passenger between points chosen by the passenger and is prearranged by a TNC using a TNC digital network." Id. A TNC digital network is "any online-enabled application, software, website, or system offered or utilized by a TNC that enables the prearrangement of rides with TNC drivers." Id. A TNC driver is "a person who uses his or her personal vehicle to provide for-hire transportation services for passengers matched through a TNC digital network. A TNC driver need not be an employee of a TNC." Id. A TNC vehicle is a motor vehicle used to provide TNC services through a TNC network that is:
(1) Owned or leased by the TNC driver, or otherwise authorized for use by the TNC driver to provide TNC services, and is not wholly owned or leased by a TNC;
(2) Not licensed as a taxicab, limousine, horse-drawn carriage, pedicab, general charter tour vehicle, sightseeing tour vehicle, courtesy vehicle, non-emergency medical vehicle, airport shuttle, or any other classification of for-hire vehicle as provided under Article *456 III of this chapter or licensed by any other political subdivision or the Louisiana Public Service Commission;
Therefore, TNCs, like Rasier/Uber, are transportation companies that have developed proprietary software that enables smartphone users to hail rides via the internet from a member of the TNC's fleet of contractor drivers. The TNCs market their services under the company's trade name, process payments from riders, and provide confirmation receipts once a ride is complete.
The City's ordinances also reveal that the City does not regulate TNCs like taxicab companies. That is, unlike its licensure of taxicabs, the City's ordinances permit TNCs to self-regulate and to ensure that its drivers satisfy the City's permitting standards. For example, a TNC driver does not obtain his Certificate of Public Necessity and Convenience/CPNC or driver's permit through the City. Rather, he obtains licensure by virtue of his contractual affiliation with the TNC, which serves as the de facto regulatory authority for its drivers. Further, the TNC is tasked with performing criminal background checks and drug testing on its drivers. Moreover, each TNC is required to maintain a registry of all employed or contracted TNC drivers and to provide an updated list of drivers to the City each month. The TNC registry shall include each TNC driver's: 1) full name; 2) date of birth; 3) Louisiana driver's license number; 4) license plate number of the vehicle used by the driver to provide TNC services; and, 5) active dates of employment. See City Code Section 162-1709. TNC drivers, unlike taxicab drivers, do not hold city-issued occupational licenses.
Next, we turn to the Cabbies Second Amending, Supplemental and Restated Petition, which provides that the Ubers are violating regulatory statutes in order to siphon the Cabbies' market share, causing income losses and other damages to the Cabbies. The petition also contains alleged examples of the Ubers accepting street hails, staging, using cab stands, and circumventing post-accident drug test requirements. The examples include the dates and the defendants' names.
Notwithstanding the above, the Ubers contend that the Cabbies have not alleged an ascertainable loss because the petitions do not contain a specific quantified amount of alleged loss. The Ubers also contend that the Cabbies "failed to meet their burden of establishing causation." The Ubers' assertions correspond with a more merit-based examination like that considered on a motion for summary judgment. However, at this early procedural stage, we are unaware of the actual evidence assembled by the Cabbies.
Accordingly, abiding by our limited scope on an exception of no cause of action, we find that the Cabbies' petition states a cause of action. Firstly, the Cabbies are persons pursuant to La. R.S. 51:1409(A). Secondly, the Cabbies alleged an ascertainable loss (loss of income, relevant market share, business reputation, goodwill, and attorneys' fees and costs), specific amounts to be determined during discovery/trial. Thirdly, the Cabbies contend that the Ubers' alleged practice of working outside the regulations applicable to TNCs results in unfair trade practices, i.e. the Ubers now are performing work reserved to the Cabbies. If Ubers are illegally functioning as Cabbies, they could be subject to the same set of regulations applicable to the Cabbies. Unfair trade practices offend "established public policy ... when the practice is unethical, oppressive, unscrupulous, or substantially injurious." Jefferson , 97-2436, p. 13, 713 So.2d at 792.
*457 Accepting all of the Cabbies' well-pleaded factual allegations as true as a whole and resolving all doubt in their favor, we find that under the facts and circumstances of this case, the Cabbies have stated a cause of action pursuant to LUTPA.[4] The trial court did not err by denying the Ubers' Exception of No Cause of Action.
DECREE
For the above-mentioned reasons, we find that the Cabbies have stated a cause of action and uphold the judgment of the trial court. The application for supervisory review is denied.
WRIT DENIED
MCKAY, C.J., DISSENTS
LOMBARD, J., DISSENTS FOR THE REASONS ASSIGNED BY J. LEDET
LOBRANO, J., CONCURS AND ASSIGNS REASONS
LEDET, J., DISSENTS WITH REASONS
JENKINS, J., CONCURS IN THE RESULT
MCKAY, C.J., DISSENTS
I dissent for the reasons assigned by Judge Ledet.
LOMBARD, J., DISSENTS FOR THE REASONS ASSIGNED BY J. LEDET
I hereby respectfully dissent from the writ disposition of the majority for the reasons assigned by J. Ledet.
LOBRANO, J., CONCURS AND ASSIGNS REASONS.
I respectfully concur in the result of the majority opinion that denies the writ of the defendants.
In Cupit v. City of New Orleans ex rel Bd. of Zoning Adjustments , 12-1708, p. 3 (La.App. 4 Cir. 7/17/13), 120 So.3d 862, 864, we stated:
The exception of no cause of action determines whether, based on the facts alleged in the four corners of the petition, the law affords the plaintiff a remedy. The court accepts the allegations of the petition as true, and decides whether the plaintiff is legally entitled to the relief claimed in the petition. See Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234, 1235 (La.1993).
Turning to the petition at issue, the plaintiffs allege that the Uber drivers have violated various city ordinances that prohibit the Uber drivers from operating outside the limitations placed on them, e.g ., accepting cash fares, using cab stands to obtain customers, and illegally providing transportation services for hire.
"LUTPA grants a right of action to any person, natural or juridical, who suffers an ascertainable loss as a result of another person's use of unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Cheramie Services, Inc. v. Shell Deepwater Production, Inc., 09-1633, p. 6 (La.4/23/10), 35 So.3d 1053, 1057. I disagree with the dissent opinion that the Uber drivers' alleged violation of local ordinances "cannot support an unfair competition claim" and that the ordinances relied upon to support the plaintiffs' "claims under LUTPA do not provide *458 for causes of actions by private persons." The allegations that these city ordinances were violated would, by definition, constitute an unfair or deceptive practice.
The plaintiffs are not required to prove their case to survive a peremptory exception of no cause of action. For these reasons, I concur in the result of the majority upholding the trial court's denial of the exception of no cause of action.
LEDET, J., DISSENTS WITH REASONS
This is a multi-plaintiff, multi-defendant suit. In their petition,[1] the plaintiffs-twenty-six individual taxi cab drivers (the "Cabbies")-assert a single cause of action against the defendants-thirty-one independent transportation providers who use the Uber app (the "Ubers"). The single cause of action is an alleged violation of the Louisiana Unfair Trade Practices Act (the "LUTPA"). The sole issue before us is whether the Cabbies' petition states a LUTPA cause of action. Contrary to the majority, I would find that the Cabbies fail to state a LUTPA cause of action. In so finding, I rely on the following three factors: (i) lack of class action; (ii) lack of causation; and (iii) lack of conspiracy claim.
Lack of Class Action
Key to the trial court's reasoning in overruling the Ubers' exception of no cause action is the assertion in the Cabbies' petition of a defendant class. The Cabbies' petition not only names multiple individual defendants, but also seeks to certify a defendant class, defined as "[a]ll UberX drivers operating in New Orleans during the time of April 16, 2015 through the present." Relying on the defendant-class action assertion, the trial court reasoned as follows:
The reason I think it's a close call is because what they're attempting to do is assert a Class, assert claims broad enough in order to create a class action. I understand what's going on. They're not attempting to do specific, this plaintiff, this defendant so much as to assert, to assert actions broad enough so as to create a group of people who potentially would qualify as a class.
The trial court's reliance on the potential creation (certification) of a defendant-class is misplaced.
The express language of the LUTPA belies any legislative intent to authorize a private party to bring either a plaintiff or a defendant class action. The pertinent statutory provision, La. R.S. 51:1409(A), states as follow:
Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405, may bring an action individually but not in a representative capacity to recover actual damages.
As one court noted, "[t]his provision of LUTPA is entitled, 'Private Actions.' This language in La. R.S. 51:1409(A) refers to 'the clear ban against class actions by private persons' under the Act." Indest-Guidry, Ltd. v. Key Office Equip., Inc. , 08-599, p. 23 (La. App. 3 Cir. 11/5/08), 997 So.2d 796, 810 (citing State ex rel. Guste v. General Motors Corp ., 370 So.2d 477, 483 (La. 1978) (Dennis, J., concurring) ).[2]
*459 The Cabbies lack the right to bring a defendant-class action asserting a LUPTA cause of action. At this juncture, however, the defendant-class has not been certified. See Landreneau , 197 F.Supp.2d at 556 (observing that "[s]hould the plaintiffs' suit become certified as a class action, they would no longer have a claim under LUTPA"). I thus agree with the majority that the "Cabbies are persons pursuant to La. R.S. 51:1409(A)" and that the Cabbies have the right to bring an individual LUTPA claim. Given the current procedural posture of the case, it is appropriate to address the exception of no cause of action based on the current status of this case-a multi-plaintiff, multi-defendant suit.
Lack of causation
In deciding the issue presented here, it is necessary to determine whether, as to each defendant, the Cabbies' petition states a LUTPA cause of action. The Louisiana Supreme Court, in Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc., 09-1633, p. 6 (La. 4/23/10), 35 So.3d 1053, 1057, promulgated a two-prong test for establishing a LUTPA cause of action: (i) the person must suffer an ascertainable loss; and (ii) the loss must result from-be caused by-another's use of unfair methods of competition and unfair or deceptive acts or practices. NOLA 180 v. Treasure Chest Casino, LLC , 11-853, p. 6 (La. App. 5 Cir. 3/27/12), 91 So.3d 446, 450 (citing Cheramie , supra ). The majority finds both elements of this test satisfied here. Accepting, arguendo , that the Cabbies adequately pled an ascertainable loss and an unfair trade practice,[3] I disagree with the majority's finding that the Cabbies have adequately pled causation.
Key to the majority's finding that the Cabbies adequately pled causation is the majority's reasoning that the Ubers' argument to the contrary goes to the merits and is more appropriately addressed at the summary judgment stage. The majority's reasoning is as follows:
The Ubers ... contend that the Cabbies "failed to meet their burden of establishing causation." The Ubers' assertions correspond with a more merit-based examination like that considered on a motion for summary judgment. However, at this early procedural stage, we are unaware of the actual evidence assembled by the Cabbies.
I disagree.
The Cabbies' petition contains only a conclusory allegation that the Ubers, collectively, are operating in violation of the law and thus causing economic harm to the Cabbies. As the Ubers contend, the Cabbies' petition fails to allege that any particular plaintiff suffered an ascertainable loss caused by a particular unfair trade practice performed by any particular defendant. The conclusory allegations of the petition regarding the Ubers' collective acts are insufficient to state a cause of action against the individual defendants. See *460 Manzo v. Uber Techs., Inc ., No. 13 C 2407 (N.D. Ill. July 14, 2014) (unpub. ), 2014 WL 3495401 at *4 (observing that "on a motion to dismiss the Court need not accept as true [plaintiff's] claim that Uber operates illegally under the Chicago Municipal Code, as this is an allegation of law, not fact"); Willis v. Brooks , 12-1674, p. 7 (La. App. 4 Cir. 6/12/13), 119 So.3d 890, 894 (observing that "mere conclusory allegations of LUTPA violations are insufficient to sustain a claim under the statute").
In 2400 Canal, LLC v. Bd. of Sup'rs of Louisiana State Univ. Agr. & Mech. Coll ., 12-0220, 12-0221, 12-0222, pp. 8-9 (La. App. 4 Cir. 11/7/12), 105 So.3d 819, 825-26, this court recognized the principle that legal conclusions alleged in a petition cannot be considered in deciding an exception of no cause of action; we explained this principle as follows:
Legal conclusions asserted as facts are not considered well-pled factual allegations for purposes of an exception of no cause of action. A court may not consider legal conclusions "clothed as fact." Simply stated, courts "are not compelled to accept a party's legal conclusions as facts." "If the pleader alleges [legal] conclusions and not material facts (such as a petition in a negligence action which alleges only that the defendant failed to use "due care"), the pleader has failed to state a cause of action."
Id. (internal citations omitted). Simply stated, the principle is that "conclusions of law and conclusions drawn by the pleader from the facts he has alleged should not be considered as true for the purposes of the exception [of no cause of action]." 1 Frank L. Maraist and Harry T. Lemmon, LOUISIANA CIVIL LAW TREATISE: CIVIL PROCEDURE § 6.7 (1999).
Applying the principle here, the Cabbies pled particular examples of alleged illegal acts of individual defendants; however, the Cabbies acknowledge that these alleged individual acts are not the basis for their single LUTPA claim. Instead, the Cabbies allege, and the majority finds, that their claim is based on the cumulative effect of the Ubers' collective acts of committing such illegal acts.[4] The Ubers contend that "[t]here is no basis for treating multiple separate occurrences as a single agglomeration that creates one big 'LUTPA claim.' " I agree. Given the Cabbies are basing their allegations against the Ubers upon mere examples of alleged violations of local ordinances and state regulations coupled with the conclusory nature of the Ubers' alleged collective acts and the cumulative effect of such acts, I would find that the Cabbies have failed to state a cause of action.
Moreover, the Ubers' alleged violation of local ordinances and state regulations cannot support an unfair competition claim, when enforcement of those ordinances and regulations has been left to state and local regulatory authorities. The ordinances and regulations relied upon to support the Cabbies' claims under LUTPA do not provide for causes of actions by private persons. Further, the Cabbies have not asserted that the Ubers have been prosecuted or fined for the alleged violations. Thus, the Cabbies have not, and cannot, assert any cause of action under LUTPA based upon the Ubers' alleged violations of those ordinances and regulations.
Lack of conspiracy
The Cabbies also allege that the Ubers engaged in a conspiracy. In particular, they aver that the Ubers "engaged in activities *461 among themselves and with others to exclude Plaintiffs from competing in the market for the same customer, which is an unfair trade practice and unfair competition." The particular allegation is based on the 2015 Voo Doo festival; the Cabbies aver as follows:
On October 31, 2015 through November 1, 2015, Defendants in concert with third parties and among themselves, were successful in prohibiting taxicabs from dropping off and picking up passengers at the Voo Doo Experience music festival... [O]nly Uber[s] were permitted to drop off and pick up outside the festival gates ... Taxicabs were barred from picking up passenger [sic] at the gate.
Conspiracy by itself is not an actionable claim under Louisiana law. Crutcher-Tufts Resources, Inc. v. Tufts, 07-1556, p. 3 (La. App. 4 Cir. 9/17/08), 992 So.2d 1091, 1094 (citing Ross v. Conoco, Inc., 02-0299 (La. 10/15/02), 828 So.2d 546 ). The actionable element of a conspiracy claim is not the conspiracy itself; rather, it is the tort that the conspirators agree to perpetrate and actually commit in whole or in part. Ames v. Ohle, 11-1540, p. 11 (La. App. 4 Cir. 5/23/12), 97 So.3d 386, 393 (citing Thomas v. North 40 Land Development, Inc., 04-0610, p. 23 (La. App. 4 Cir. 1/26/05), 894 So.2d 1160, 1174 ). This court, in Thomas , supra , observed the following:
Under La. C.C. article 2324, "[h]e who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act." La. C.C. art. 2324(A). To establish a conspiracy, a plaintiff is required to provide evidence of the requisite agreement between the parties. Guidry v. Bank of LaPlace, 94-1758, p. 9 (La. App. 4 Cir. 9/15/95), 661 So.2d 1052, 1058. Stated otherwise, the plaintiff is required to establish a meeting of the minds or collusion between the parties for the purpose of committing wrongdoing. Id.
04-0610 at p. 23, 894 So.2d at 1174.
"The conspiracy action is 'for damages caused by acts committed pursuant to a formed conspiracy, and all of the conspirators will be regarded as having assisted or encouraged the performance of those acts.' " Thomas , 04-0610, p. 22, 894 So.2d at 1174 (quoting Chrysler Credit Corp. v. Whitney Nat'l Bank , 51 F.3d 553, 557 (5th Cir.1995) ); see also Prime Ins. Co. v. Imperial Fire and Cas. Ins. Co. , 14-0323, p. 10 (La. App. 4 Cir. 10/1/14), 151 So.3d 670, 677. A conspiracy can be proved by "actual knowledge, overt actions with another, such as arming oneself in anticipation of apprehension, or inferred from the knowledge of the alleged co-conspirator of the impropriety of the actions taken by the other co-conspirator." Stephens v. Bail Enforcement of Louisiana , 96-0809, p. 10 (La. App. 1 Cir. 2/14/97), 690 So.2d 124, 131.
Here, the Cabbies have failed to name the alleged co-conspirators. The Cabbies have failed to allege that the Ubers had control over who was allowed to drop off or pick up passengers at the Voo Doo festival. The Cabbies have failed to make any allegations regarding who made such decisions and whether there was an actual agreement between the Ubers and the other unknown co-conspirators to exclude the Cabbies. The Cabbies have failed to allege that they specifically attempted to drop off or pick up passengers at the Voo Doo festival. In sum, the Cabbies have failed to sufficiently allege a cause of action for conspiracy against the Ubers.
For the foregoing reasons, I would grant the writ application filed by the Relators, the Ubers; reverse the trial court's ruling denying the exception of no cause of action;
*462 and remand to the trial court for further proceedings.[5]
JENKINS, J., CONCURS IN THE RESULT

The Ubers filed a Motion to Strike the First Supplemental and Amended Petition, which the trial court denied. This Court and the Louisiana Supreme Court denied writs. Green v. Garcia-Victor , 17-0041, unpub. (La. App. 4 Cir. 2/7/17), writ denied , 17-0436 (La. 4/24/17), 221 So.3d 67.

"A TNC is an organization 'that connects passengers with drivers using their personal vehicle for purposes of for-hire transportation services by means of a TNC digital network.' " Rasier, LLC v. City of New Orleans , 16-0930, p. 2 (La. App. 4 Cir. 6/14/17), 222 So.3d 806, 810, quoting City Code Section 162-1700.

This Court's opinion does not reflect upon whether a class can be certified or whether the Cabbies' claims will survive motion for summary judgment or trial.

The petition in question is the "Second Amending, Supplemental and Restated Petition."

See also J-W Power Co. v. State ex rel. Dep't of Revenue & Taxation , 10-1598, p. 11, n. 11 (La. 3/15/11), 59 So.3d 1234, 1242 (citing Indest-Guidry , supra (citing State ex rel. Guste , supra ) ) (observing that "[t]he jurisprudence indicates that this statute precludes the use of a class action in this context"); Morris v. Sears, Roebuck & Co ., 99-2772, p. 3 (La. App. 4 Cir. 5/31/00), 765 So.2d 419, 421 (observing that "[t]he Louisiana Unfair Trade Practices Act (LUPTA), R.S. 51:1401, et seq ., expressly prohibits a private class action"); Landreneau v. Fleet Financial Group , 197 F.Supp.2d 551, 557, n. 30 (M.D. La. 2002) (citing Montegut v. Williams Communs., Inc. , 109 F.Supp.2d 496, 498 (E.D. La. 2000) ; Morris , supra ) ("observing that "[b]oth federal and state court jurisprudence confirms that private individuals may not assert class actions under LUTPA").

The majority finds that the Cabbies pled an ascertainable loss, stating that "the Cabbies alleged an ascertainable loss (loss of income, relevant market share, business reputation, goodwill, and attorneys' fees and costs), specific amounts to be determined during discovery/trial."

Particularly, paragraph 77 of the petition states that the Cabbies suffered an ascertainable loss of money "as a direct and foreseeable result of the illegal and unlawful unfair trade practices committed by Defendants[.]"

The record reflects that at least one of the named defendants was not a party to the exception of no cause of action. For this reason, I would remand to the trial court for further proceeding as opposed to rendering judgment dismissing the case.