Judge Daniel L. Dysart
This is an appeal of a trial court judgment granting a peremptory exception of no cause of action filed by defendant-appellee, District Attorney Charles J. Ballay, in his official capacity as District Attorney, 25th Judicial District, State of Louisiana (hereafter, "DA Ballay"). After having conducted a de novo review of this matter, we find that the exception was properly granted. Accordingly, we affirm the trial court's judgment.
FACTS AND PROCEDURAL BACKGROUND
In this suit seeking damages for malicious prosecution, plaintiff-appellant, Benjamin Tickle, alleges that, on September 1, 2012, he, his wife and a friend had gone to the Belle Chasse ferry landing with the intention of "checking up on the post-hurricane condition of [his] property." There, they encountered several police officers. At the time, Mr. Tickle "was carrying a holstered .45 caliber Glock semi-automatic pistol clearly visible on his right hip" and one of the officers "approached him from behind and seized his weapon," refusing to return the weapon unless it was disassembled.[1] Ultimately, Mrs. Tickle's vehicle was searched, two additional guns were found in the glove compartment and marijuana was found under the floor mat. Marijuana was also discovered in a search of Mrs. Tickle's purse. Mr. Tickle, his wife and his friend were then arrested.[2]
Mr. Tickle was charged by bill of information dated January 3, 2013 with possession of a schedule I substance under La. R.S. 40:966, and "possession of a CDS ( La. R.S. 14:95(E)."[3] An amended bill of information *437 filed on January 8, 2014 charged Mr. Tickle with "Statewide Permits for Concealed Handguns ( La. R.S. 40:1379.3 (I)&(L) )."[4] Mr. Tickle, maintaining that there had been an unlawful search in connection with his arrest, filed a Motion to Suppress the evidence, which was denied by the trial court.[5]
Mr. Tickle was tried and acquitted of all charges and "[t]he matter ... finally disposed of in January, 2015." Mr. Tickle filed a federal lawsuit for malicious prosecution against DA Ballay in December of 2015. The federal court dismissed all claims; the state law claims were dismissed without prejudice. Mr. Tickle then filed the instant lawsuit, naming DA Ballay and several officers.[6]
In response to the Petition for Damages ("Petition"), DA Ballay filed Peremptory Exceptions of No Cause of Action and Prescription. After a hearing, the trial court granted the exception of no cause of action, by judgment dated December 28, 2017, dismissing, with prejudice, all claims against DA Ballay, but denied the exception of prescription.
Mr. Tickle timely appealed the trial court judgment. DA Ballay answered the appeal, requesting that, in the event that the grant of the exception of no cause of action is reversed by the Court, that the exception of prescription, denied by the trial court, be considered. As we find that the exception of no cause of action was properly granted, we do not address the exception of prescription.
STANDARD OF REVIEW; PEREMPTORY EXCEPTION OF NO CAUSE OF ACTION
A peremptory exception of no cause of action under La. C.C.P. art. 927 A(5) questions whether the law extends a remedy against a defendant to anyone under the factual allegations of a petition. Mid-S. Plumbing, LLC v. Dev. Consortium-Shelly Arms, LLC , 12-1731, p. 4 (La. App. 4 Cir. 10/23/13), 126 So.3d 732, 736. That is, "[a]n exception of no cause of action tests 'the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading.' " Green v. Garcia-Victor , 17-0695, p. 4 (La. App. 4 Cir. 5/16/18), 248 So.3d 449, 453, quoting Moreno v. Entergy Corp ., 10-2281, p. 3 (La. 2/18/11), 62 So.3d 704, 706. In Green , we reiterated our well-settled jurisprudence
"In deciding an exception of no cause of action a court can consider only the petition, any amendments to the petition, and any documents attached to the petition." 2400 Canal, LLC [v. Bd. of Sup'rs of Louisiana State Univ. Agr. & Mech. Coll.] , 12-0220, p. 7 [ (La.App. 4 Cir. 11/7/12) ], 105 So.3d [819,] 825.... "The grant of the exception of no cause of action is proper when, assuming all well pleaded factual allegations of the petition and any annexed documents are true, the plaintiff is not entitled to the relief he seeks as a matter of law." Id.
*438 Further, "any doubt must be resolved in the plaintiffs' favor." Id.
Id. , pp. 4-5, 248 So.3d at 453.
"Because exceptions of no cause of action present legal questions, they are reviewed using the de novo standard of review." New Jax Condominiums Ass'n, Inc. v. Vanderbilt New Orleans, LLC , 16-0643, p. 11 (La. App. 4 Cir. 4/26/17), 219 So.3d 471, 479, writ denied sub nom. Hew Jax Condominiums Ass'n, Inc. v. Vanderbilt New Orleans, LLC , 17-0887 (La. 9/29/17), 227 So.3d 287.
We have conducted a de novo review of the Petition and find that it fails to state a cognizable cause of action against DA Ballay. Because we affirm the grant of the exception of no cause of action, we need not address the issue of whether the trial court's denial of the peremptory exception of prescription was in error, as raised by DA Ballay, as an alternative argument, in his answer to the appeal.
DISCUSSION
As Mr. Tickle readily acknowledges, Louisiana law provides immunity to prosecutors for lawsuits alleging malicious prosecution. He contends, however, that the immunity protects prosecutors, individually, but does not protect against those claims asserted against them in their official capacity. We disagree.
The doctrine of absolute prosecutorial immunity evolved from the United States Supreme Court in the decision of Imbler v. Pachtman , 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).[7] Imbler involved a suit against a prosecutor (and others) for malicious prosecution filed pursuant to 42 U.S.C.A. § 1983.[8] The Supreme Court, concluding that "the same considerations of public policy that underlie the common-law rule [of immunity] likewise countenance absolute immunity," noted as follows:
If a prosecutor had only a qualified immunity, the threat of [§] 1983 suits would undermine performance of his duties no less than would the threat of common-law suits for malicious prosecution. A prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in conducting them in court. The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages. Such suits could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate. ... Further, if the prosecutor could be made to answer in court each time such a person charged him with *439 wrongdoing, his energy and attention would be diverted from the pressing duty of enforcing the criminal law.
Id. , 424 U.S. at 424-25, 96 S.Ct. at 992. The Court also noted other factors which justified the doctrine of absolute immunity: "affording of only a qualified immunity to the prosecutor also could have an adverse effect upon the functioning of the criminal justice system" and "[t]he ultimate fairness of the operation of the system itself could be weakened by subjecting prosecutors to [§] 1983 liability." Id. , 424 U.S. at 426-27, 96 S.Ct. at 993. Thus, where a prosecutor's "activities [are] intimately associated with the judicial phase of the criminal process, [they are] functions to which the reasons for absolute immunity apply with full force." Id. , 424 U.S. at 430, 96 S.Ct. at 995. The Court ultimately held that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages." Id. , 424 U.S. at 431, 96 S.Ct. at 995.
The Supreme Court expounded on Imbler in numerous cases, including Buckley v. Fitzsimmons , 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993), in which the Court noted situations for which absolute immunity does not protect a prosecutor, and in which a prosecutor is only entitled to a qualified immunity.[9] The Court explained that "the Imbler approach focuses on the conduct for which immunity is claimed, not on the harm that the conduct may have caused or the question whether it was lawful." Id. , 509 U.S. at 271, 113 S.Ct. at 2615. It then found that:
[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity. ... We have not retreated, however, from the principle that acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity.
Id. , 509 U.S. at 273, 113 S.Ct. at 2615. In this regard, when "a prosecutor 'functions as an administrator rather than as an officer of the court' he is entitled only to qualified immunity." Id , 509 U.S. at 273, 113 S.Ct. at 2616, quoting Imbler , 424 U.S. at 431, n. 33, 96 S.Ct. at 995, n. 33. See also , Kalina v. Fletcher , 522 U.S. 118, 131, 118 S.Ct. 502, 510, 139 L.Ed.2d 471 (1997) ("the prosecutor is fully protected by absolute immunity when performing the traditional functions of an advocate"). As example of a situation where only a qualified immunity will apply, the Buckley Court found that "[w]hen a prosecutor performs the investigative functions normally performed by a detective or police officer, it is 'neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.' " Buckley , 509 U.S. at 273, 113 S.Ct. at 2616 (internal citation omitted).
More recently, the United States Supreme Court explained that the Imbler "Court made clear that absolute immunity may not apply when a prosecutor is not acting as 'an officer of the court,' but is instead engaged in other tasks, say, investigative or administrative tasks." Van de Kamp v. Goldstein , 555 U.S. 335, 342, 129 S.Ct. 855, 861, 172 L.Ed.2d 706 (2009), citing Imbler , at 431, n. 33, 96 S.Ct. 984. The Court went on to provide further examples of when absolute immunity protects a prosecutor:
*440 ... when a prosecutor prepares to initiate a judicial proceeding, ... or appears in court to present evidence in support of a search warrant application.... We have held that absolute immunity does not apply when a prosecutor gives advice to police during a criminal investigation, ... when the prosecutor makes statements to the press, ... or when a prosecutor acts as a complaining witness in support of a warrant application.
Id. , 555 U.S. at 343, 129 S.Ct. at 861 (internal citations omitted).
Imbler was followed by the Louisiana Supreme Court in Knapper v. Connick , 96-0434 (La. 10/15/96), 681 So.2d 944. Knapper was a suit for malicious prosecution filed against a prosecutor after an application for post-conviction relief had been granted following the discovery that the initial police report, containing exculpatory evidence, had not been produced prior to the plaintiff's trial for first degree murder. Noting that Imbler is not binding precedent because it dealt with a federal statute, the Court found the "reasoning of the Court regarding absolute prosecutorial immunity [to be] persuasive. Id. , p. 5, 681 So.2d at 947. Among its considerations, the Court found that "[t]he overwhelming majority of courts in other states have extended absolute immunity to prosecutors when they are acting within their traditional roles as advocates for the state," and that "[t]he Restatement (Second) Of Torts § 656 (1970) likewise provides that a 'public prosecutor acting in his official capacity is absolutely privileged to initiate, institute, or continue criminal proceedings.' " Id. , p. 4, 681 So.2d at 947.
The Court further noted that:
Chief among the reasons most often cited for granting absolute prosecutorial immunity are concern that constant fear of later civil suits for damages may chill the vigorous prosecution of those charged with violating state statutes; that such fears may deter competent people from seeking office; and that defense of claims for malicious prosecution may drain valuable time and effort.
Id. , p. 5, 681 So.2d at 947. Moreover, even where the "prosecutorial misconduct can be proven to have been intentional and malicious, nevertheless [as the Imbler Court found,] the disadvantages that would result from any lesser form of immunity would be so substantial that absolute immunity is warranted even in cases where there is evidence of malice." Id. , pp. 6-7, 681 So.2d at 948. Thus, in Imbler , the "knowing use of false testimony before a grand jury and at trial would not defeat the absolute immunity of the prosecutor for conduct in "initiating a prosecution and presenting the state's case.' " Id. p. 7, 681 So.2d at 948.
The Knapper Court ultimately held that "a prosecutor acting within the scope of his prosecutorial duties as an advocate for the state is entitled to absolute immunity from suit for malicious prosecution as a consequence of conduct intimately associated with the judicial phase of the criminal process." Id. , p. 11, 681 So.2d at 951. Thus, prosecutors have "absolute immunity from claims of prosecutorial misconduct" arising out of the judicial phase of prosecuting criminal cases "and for ... conduct falling within the course and scope of their prosecutorial functions." Hayes v. Par. of Orleans , 98-2388 (La. App. 4 Cir. 6/16/99), 737 So.2d 959, 961. Consistent with the Imbler case, the Hayes Court noted that the immunity "extends even to prosecutorial actions taken in bad faith or with malice." Id.
Our case law is replete with decisions upholding the absolute immunity of prosecutors for malicious prosecution where the claims asserted arise from conduct within the role of the prosecutors. See , e.g. , *441 Ballard v. Waitz , 06-0307 (La. App. 1 Cir. 12/28/06), 951 So.2d 335, 338 (where the district attorney failed to timely set an arraignment, resulting in a lengthy detainment, "the district attorney ... is afforded absolute immunity .... [T]he claim that the district attorney failed to set [the] arraignment within the thirty-day time frame provided by LSA-C.Cr.P. art. 701(C), is clearly an action that occurred after his indictment, and in connection with judicial proceedings, as opposed to administrative or investigative functions."); Colquitt v. Claiborne Par., Louisiana , 36,260 (La. App. 2 Cir. 8/14/02), 823 So.2d 1103, 1105 (in suit against district attorney for alleged violation of right to speedy trial, these allegedly "improper acts by the district attorney[,] undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur[ed] in the course of his role as an advocate for the state, are entitled to prosecutorial immunity that has been termed absolute."); Keller v. McElveen , 98-812 (La. App. 3 Cir. 6/2/99), 744 So.2d 643, 648-49, upholding an exception of no cause of action against a district attorney for his failure to remove the name of the plaintiff from a national crime database after charges against her had been dismissed ("[w]hile this paperwork or communication is incrementally attenuated from the actual decision to dismiss the charges, a function undoubtedly prosecutorial, we conclude that it is still an extension of the prosecutorial duty and not the type of administrative function that does not afford absolute immunity. The communication is intimately associated with the function of a prosecutor, as a prosecutor, in a criminal matter."); Fine v. Senette , 97-1851 (La. App. 1 Cir. 6/29/98), 714 So.2d 1263, 1265, upholding a summary judgment dismissing claims against a district attorney who allegedly provided a parole board with false information at a clemency hearing ("the requisite communications between the prosecutor and clemency authorities, as a portion of the sentencing process, are within the scope of the prosecutor's role as an advocate for the state and are entitled to absolute immunity.").
Mr. Tickle urges this Court to adopt an exception to the rule of absolute immunity for a prosecutor when the claims are asserted against him "in his official capacity." In support of his position, he cites Kentucky v. Graham, 473 U.S. 159, 165, 105 S.Ct. 3099, 3106, 87 L.Ed.2d 114 (1985), which noted a "distinction between personal - and official-capacity suits." This language in Graham is not decisive of the issue in the instant matter. Unlike the instant matter, Graham arose in the context of an alleged violation of a federal law, 42 U.S.C. § 1983, which provides the basis for a civil action for damages for the deprivation of rights.[10] In this case, no federal claims were asserted; Mr. Tickle's Petition "seeks damages for malicious prosecution under Louisiana law."[11]
More importantly, even if this Court were to apply the rationale of Graham to a claim for malicious prosecution under state law, Graham would still support the grant of an exception of no cause of action. At issue in Graham was whether attorney's fees are recoverable by a party who prevails in a civil rights action under *442 42 U.S.C. § 1988.[12] Graham did not involve a suit against a prosecuting attorney; it was a suit against the commissioner of police and the Commonwealth of Kentucky for damages from several arrestees who claimed to have been "severely beaten, terrorized, illegally searched, and falsely arrested" in connection with a murder investigation. Id. , 473 U.S. at 161, 105 S.Ct. at 3103. The trial court dismissed the Commonwealth of Kentucky based on the immunity afforded by the Eleventh Amendment to the Constitution.[13] Suit was then settled on the second day of trial, after which the plaintiffs moved for, and were granted, an award of attorney's fees against the Commonwealth of Kentucky under § 1988.
The Supreme Court noted a distinction between "[p]ersonal-capacity suits [which] seek to impose personal liability upon a government official for actions he takes under color of state law" and "[o]fficial-capacity suits, in contrast, [which] 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' " Id. , 473 U.S. at 165-66, 105 S.Ct. at 3105 (internal citations omitted). It likewise noted that "[m]ore is required in an official-capacity action ... for a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation, ... ; thus, in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law ." Id. , 473 U.S. at 166, 105 S.Ct. at 3105. (emphasis added).[14]
The Court ultimately concluded that despite having named the police commissioner "in both his 'individual' and 'official' capacities," the suit was, in actuality, an individual-capacity suit. Id. , 473 U.S. at 169, 105 S.Ct. at 3107. Finding that "an official-capacity action for damages could not have been maintained against [the commissioner] in federal court," the plaintiffs could not circumvent "this same end simply by suing State officials in their official capacity." Id. , 473 U.S. at 170, 105 S.Ct. at 3107.
As Graham makes clear, the mere use of the words "in his official capacity" does not transform a suit into an "official-capacity" suit. Indeed, " Will v. Michigan Dept. of State Police , 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45, (1989), ... makes clear that the distinction between official-capacity suits and personal-capacity suits is more than 'a mere pleading device.' " Hafer , 502 U.S. at 27, 112 S.Ct. at 362.
This Court has followed the Graham decision for the principle that "[b]ecause the real party in interest in an 'official capacity' suit is the governmental entity, and not the named official, the entity's policy or custom must have played a part in the violation of federal law."
*443 Sommer v. State, Dep't of Transp. & Dev ., 97-1929, p. 20 (La. App. 4 Cir. 3/29/00), 758 So.2d 923, 936[15] ; See also , Trantham v. City of Baker , 10-1695 (La. App. 1 Cir. 3/25/11), 2011 WL 1103628 at *3 ("Claims brought under § 1983 against a defendant in his individual capacity require a showing that the official, acting under color of state law, deprived the plaintiff of a federal right .... When bringing suit against persons in their official capacity, a plaintiff must make a more significant showing than when he sues an individual defendant, showing that the governmental entity's policy or custom played a part in the violation of federal law.")
In this matter, all of Mr. Tickle's claims pertain to DA Ballay's alleged conduct in "initiating a prosecution and presenting the state's case." He cites no governmental 'policy or custom' which played a part in any alleged violation. The Petition first recites the circumstances leading to Mr. Tickle's arrest on September 1, 2012 and the alleged misdeeds of the arresting police officers. The Petition then alleges the following facts:
- The Plaquemines Parish District Attorney's office instituted charges against Mr. Tickle by way of a Bill of Information filed on January 3, 2013, and the "criminal proceeding lasted over two years;"
- Defense counsel filed a motion to suppress, which was denied; a supervisory writ to this Court was likewise denied;
- An amended bill of information was filed on January 8, 2013;
- After a trial on the merits, Mr. Tickle was acquitted of all charges.
Mr. Tickle's suit is not against DA Ballay; there are no specific allegations against DA Ballay. Rather, DA Ballay was named "in his official capacity." The Petition contains allegations against the district attorney's office; namely:
- The "criminal proceeding was begun and maintained by the District Attorney's office"
- The District Attorney's Office did not have probable cause to begin the suit, due to all illegal behavior being committed by Mrs. Tickle;" a fact "known not later than her conviction."
Mr. Tickle alleges that "[m]alice is here [sic] inferable from the prosecution's zeal in pursuing this matter despite the manner in which the arrest took place, from the reach of their arguments on appeal of the motion to suppress, and their [sic] disregard for the inconsistent police reports and testimony of the police witnesses at trial."
It is clear that all of Mr. Tickle's allegations against DA Ballay (and the district attorney's office, in general) arise from of actions taken by the district attorney's office in the prosecution of criminal charges against him. As such, they clearly fall within the realm of prosecutorial immunity for activities intimately associated with the judicial phase of the criminal process. Mr. Tickle does not point to any action on the district attorney's office that is outside the scope of the prosecution of the case.
Even were we to assume, as Mr. Tickle maintains, that there was a lack of probable cause for pursuing criminal proceedings, this claim, too, falls within the ambit of prosecutorial immunity. Mr. Tickle has not articulated how the pursuit of criminal charges against him cannot be considered to "fall within the scope of the prosecutor's role as an advocate for the state" which, as the Knapper Court found, is the basis for *444 "granting absolute immunity to prosecutors from malicious prosecution suits." Knapper , 96-0434, p. 10 (La. 10/15/96), 681 So.2d at 950. Hayes , 98-2388, 737 So.2d at 960. Moreover, as this Court indicated in Hayes , "conduct falling within the course and scope of their prosecutorial functions" is entitled to immunity "even to prosecutorial actions taken in bad faith or with malice." Hayes , 98-2388, 737 So.2d at 961.
Accordingly, we find that, under the circumstances of this case, DA Ballay (in his official capacity as District Attorney, 25th JDC) has prosecutorial immunity for all of the allegations asserted against him. As such, the trial court properly granted the exception of no cause of action.
We need not reach the issue of whether, as Mr. Tickle suggests, at the hearing on the exceptions, the trial court improperly considered the outcome of the preliminary examination in the criminal proceeding. We note that, aside from argument of counsel, there is nothing in the record which demonstrates that the trial court's ruling was based on the finding of probable cause in the criminal matter. There is no transcript of the hearing in the record and the judgment does not contain any reference to the preliminary examination. Nor were any reasons for judgment issued which indicate that the court's ruling was in any way based on a probable cause finding. The only reference is in a minute entry which states that "[t]he Court addressed the parties regarding probable cause found by Judge Clement." This issue is, therefore, not before this Court. See , e.g. , Perez v. Evenstar, Inc. , 12-094, p. 12 (La. App. 4 Cir. 1/30/13), 108 So.3d 898, 906 ("It is well established that as a general matter, appellate courts will not consider issues ... which the trial court has not addressed")(internal citations omitted).
As a final note, we are cognizant that La. C.C.P. art. 934 authorizes a trial court to allow a plaintiff to amend his petition when it fails to state a cause of action and the grounds for the objection can be removed by amendment. See Ocwen Loan Servicing, LLC v. Porter , 18-0187, p. 9 (La. App. 4 Cir. 5/23/18), 248 So.3d 491, 498 ("when a plaintiff's petition fails to state a cause of action the plaintiff is entitled to an opportunity to remove the grounds for the exception by amending its petition."). However, our jurisprudence indicates that "[t]he right to amend a petition following the sustaining of a peremptory exception is not absolute." Hershberger v. LKM Chinese, L.L.C ., 14-1079, p. 6 (La. App. 4 Cir. 5/20/15), 172 So.3d 140, 145. "Amendment is not permitted when it would constitute a 'vain and useless act.' " Id. , quoting Smith v. State Farm Ins. Companies , 03-1580, p. 6 (La. App. 4 Cir. 3/3/04), 869 So.2d 909, 913. See also NOLA 180 v. Harrah's Operating Co., 12-0072, p. 6 (La. App. 4 Cir. 5/16/12), 94 So.3d 886, 889.
Our jurisprudence also prohibits an amendment to a petition which changes the substance of the Petition. NOLA 180 , 12-0072, pp. 6-7, 94 So.3d at 889. In, Massiha v. Beahm , 07-0137, p. 6 (La. App. 4 Cir. 8/15/07), 966 So.2d 87, 91, this Court concluded that "the petition contain[ed] nothing to clarify and thus, ... amending the petition would be a vain and useless act." In so finding, the Massiha Court relied, in part, on the decision of Gates v. Hanover Insurance Co., 218 So.2d 648, 653 (La. App. 4 Cir. 1969), which found:
We can conceive of no amendment by which their alleged cause of action against the sheriff, based on his vicarious liability as the superior officer of Deputy Mackles acting in the discharge of official duties, can be removed under our jurisprudence. In fact they do not propose to so amend but rather they propose, if allowed to do so, to change completely their basis of suit and now *445 allege a different cause of action. They propose to allege a cause of action against the sheriff not based on his vicarious liability for the tortious acts of his deputy, but grounded on his primary liability as a tort feasor personally. This would not be an amplification or clarification of the allegations of the original petition, but a change of substance; the allegation of a different cause of action. This is not the kind of amendment contemplated by the article.
In the instant matter, we, too, can conceive of no amendment by which Mr. Tickle could state a cause of action against DA Ballay. It is clear that his complaints against DA Ballay focus solely on the decision of the district attorney's office to pursue the criminal charges against him and to prosecute him for those charges. As we have found, this conduct is clearly encompassed by the doctrine of prosecutorial immunity. We also note, as did the NOLA 180 Court, that Mr. Tickle did not request an opportunity to amend his petition.
CONCLUSION
For the reasons set forth herein, the judgment of the trial court, granting the exception of no cause of action, is affirmed.
AFFIRMED

Mr. Tickle maintains that he holds a concealed weapons license which permitted his carrying of a concealed weapon.

Mrs. Tickle pled guilty to simple possession of marijuana, which was affirmed by this Court after an errors patent review of the record. State v. Tickle , 14-1155 (La. App. 4 Cir. 4/15/15), 2015 WL 1775521 (unpub.).

It is unclear to what Mr. Tickle refers by his usage of "CDS." La. R.S. 14:95 prohibits the "[i]llegal carrying of a weapon." La. R.S. 14:95 A. Subpart E sets forth the penalty for the illegal carrying of a weapon when "the offender uses, possesses, or has under his immediate control any firearm, or other instrumentality customarily used or intended for probable use as a dangerous weapon, while committing or attempting to commit a crime of violence or while unlawfully in the possession of a controlled dangerous substance."

That statute provides, in pertinent part, that "[n]o individual to whom a concealed handgun permit is issued may carry and conceal such handgun while under the influence of alcohol or a controlled dangerous substance." La. R.S. 40:1379.3

Mr. Tickle filed an application for a supervisory writ with this Court seeking review of the denial of his Motion to Suppress. This Court denied the writ application, finding that Mr. Tickle had "an adequate remedy on appeal if he is ultimately convicted." State v. Tickle , 14-K-0699 (La. App. 4 Cir. 7/8/14)(unpub.).

The officers were dismissed from the lawsuit on March 5, 2018.

Imbler was not the first case in which prosecutorial immunity was considered. In its review of prior case law, the Imbler Court quoted a prior decision, affirmed by the Supreme Court at 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927), for the principle that "a special assistant to the Attorney General of the United States, in the performance of the duties imposed upon him by law, is immune from a civil action for malicious prosecution based on an indictment and prosecution, although it results in a verdict of not guilty rendered by a jury. The immunity is absolute, and is grounded on principles of public policy." Id. , 424 U.S. 409, 422, 96 S.Ct. 984, 991, quoting Yaselli v. Goff , 12 F.2d 396, 406 (1926).

42 U.S.C.A. § 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...."

In Buckley , the allegations were that the prosecutor had fabricated evidence during the initial investigation of a crime and had falsely announced the return of an indictment during a press conference.

Every case cited by Mr. Tickle in support of this argument concerned alleged civil rights claims under 42 U.S.C. § 1983.

In fact, the Petition specifically alleges when the suit was pending in federal court, all "federal claims were dismissed." The state law claims were also dismissed but "without prejudice to [Mr. Tickle's] right to seek available state court relief."

At the time of the Graham decision, Section 1988 provided that "[i]n any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs" (emphasis added)." Graham , 473 U.S. at 163, 105 S.Ct. at 3104.

"[T]he Eleventh Amendment bars a damages action against a State in federal court." Id. , 473 U.S. at 169, 105 S.Ct. at 3107.

In Hafer v. Melo , 502 U.S. 21, 25, 112 S.Ct. 358, 361-62, 116 L.Ed.2d 301 (1991), the Supreme Court reiterated this by reaffirming the principle that "[b]ecause the real party in interest in an official-capacity suit is the governmental entity and not the named official, 'the entity's 'policy or custom' must have played a part in the violation of federal law."

Sommer , too, was a suit brought under 42 U.S.C. § 1983 for an alleged deprivation of rights.